28016. ANDERSON *v.* MEACHAM.

DECIDED FEBRUARY 28, 1940. REHEARING DENIED MARCH 30, 1940.

*Roy V. Harris, Henry T. Chance Jr.,* for plaintiff in error.
*Bussey & Fulcher,* for defendant.
*George A. McNulty, Irving J. Levy, George A. Downing, Richard E. Cotton,* as amici curiæ.

GUERRY, J. Lonnie Anderson brought his action against J. T. Meacham, and alleged that the defendant operated a grist mill in Richmond County thirteen miles south of Augusta; that he ground meal thereat, put it in sacks, and shipped and sold it to merchants in Georgia and South Carolina; that the plaintiff worked for the defendant at said mill, assisting in the grinding and sacking of the meal, from January 1, 1939, to March 4, 1939, and was paid $51.50 for his services during the seven weeks he worked, or $7 a week for four weeks, $7.50 for one week, and $8 a week for two weeks; that the plaintiff kept an accurate record of the number of hours he worked during that period, and he alleged the number of *excess* hours he worked during each week; that at the rate of 44 hours a week under the fair labor-standards act of Congress of 1938 (U. S. C. A.; title 29, §§ 201 et seq.) he should have worked during the seven weeks 308 hours, but that during that time he actually worked 534.5 hours; that as to the 308 hours he should have received $77 at the rate of 25 cents per hour minimum, and received only $51.50; and that for the 226.5 hours overtime he was entitled to time and one-half time, or 37.5 cents per hour; that he was entitled to $110.45 in addition to the $51.50 paid to him, and to a penalty in such sum as would equal the above sum. The

action was to recover $220.90 and attorney's fees, under the fair labor-standards act just cited. A general demurrer to the petition was sustained on the grounds that it failed to set out a cause of action; that it affirmatively appeared that the defendant was engaged in agriculture, and as such was exempt from the provisions of the act; that it affirmatively appeared that the cause of action arose under an act of Congress regulating commerce between the States, and the United States courts had exclusive jurisdiction in the premises; and that the action was for a penalty, and that a penalty incurred under the laws of the United States was a matter of which the United States courts had exclusive jurisdiction.

The fair labor-standards act passed by Congress on June 25, 1938, 29 U. S. C. A. 201, provides that Congress, through its power to regulate commerce among the States, enacts this legislation to correct certain evils and to promote certain benefits therein enumerated. Section 216 declares that any employer who violates the provisions of sections 206 and 207, which relate to the minimum hours and minimum wage to be paid, both as to time and overtime, shall be liable to the employee or employees to be affected, in the amount of their unpaid minimum wages or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages; that the action to recover such liability may be maintained by the employee in any court of competent jurisdiction; and that an allowance for attorney's fees may be had in such suit. Under the view we take of the case it becomes immaterial to consider whether the demurrer was properly sustained on the ground that the United States courts have exclusive jurisdiction over matters regulating interstate commerce. Section 371 of 28 U. S. C. A. declares: "The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned shall be exclusive of the courts of the several States: First. Of all crimes and offenses cognizable under the authority of the United States. Second. Of all suits for penalties and forfeitures incurred under the laws of the United States." The fact that the employee may bring his action for an additional equal amount as liquidated damages is nothing more or less than a penalty fixed and incurred under the law of the United States. We think the employee in this case, having elected to bring his action for a penalty as is provided by the act, is restricted to the United States

court for his relief, and that the demurrer based on this ground was properly sustained. See *Helwig v. United States*, 188 U. S. 605 (23 Sup. Ct. 427, 47 L. ed. 614); Pacific Mail Steamship Co. *v. Schmidt*, 241 U. S. 245 (36 Sup. Ct. 581, 60 L. ed. 982); *Collie v. Fergusson*, 281 U. S. 52 (50 Sup. Ct. 189, 74 L. ed. 696); O'Sullivan *v. Felix*, 233 U. S. 318 (34 Sup. Ct. 596, 58 L. ed. 980); *Southern Ry. Co. v. Inman*, 11 *Ga. App.* 564 (75 S. E. 908).

We think a still stronger reason for the sustaining of the demurrer is that under the allegations of the petition the defendant is exempt from the provisions of the act. Section 213 of the act declares that the provisions with reference to minimum hours and minimum wage do *not* apply to any employee employed "in agriculture" or "to any individual employed within the area of production (as defined by the administrator), engaged in handling, packing, storing, ginning, compressing, pasteurizing, drying, *preparing in their raw or natural state* or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products." This plaintiff alleges that the defendant operated a grist-mill thirteen miles in the country. This court knows as a matter of common knowledge that hundreds of grist-mills dot the streams, or are operated in every community of the State. The miller takes his toll from the product being ground. He sells this toll in his community, or he may ship it to an adjoining State as is alleged here. He may himself raise the corn ground. We also take cognizance that Richmond County is separated from the State of South Carolina by the Savannah River. There is no allegation in the petition that this mill or this area is not within that defined by the administrator. The grinding of meal is one of the oldest manufacturing enterprises of the State, and is closely and basically connected with agriculture. We can in our mind's eye see that barefoot boy with cheeks of tan and heart of joy wending his way to the old mill, on the back of old Dobbin, with his sack of corn evenly balanced, and returning with the corn converted into meal. In a land like Georgia, familiar with the use of corn bread and "pot licker," we would be loath to hold that the common, ordinary miller was such an employer of labor, grinding the heart and ambition out of his helpers, as to be subject to the harsh penalties of the fair labor-standards act. We think the average congressman, when the exemption above quoted was placed

in the act, had in mind just such instances as the one alleged in the present case. We dare say the income from the average mill for the grinding of corn in Georgia would not allow the miller to pay the minimum wage fixed by the act. Its application would no doubt close ninety per cent. of those being operated, and thus add to, rather than ameliorate, the evils the act was intended to cure. The court did not err in sustaining the demurrer and in dismissing the action.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*