**Haddad v. Beckerman Shoe Corp.**

*Darlington Hoopes*, for plaintiff.

*Stevens & Lee, William R. Lessig, Jr.,* and *Allan K. Grim,* for defendant.

SHANAMAN, J., May 5, 1941.—This was assumpsit under the Fair Labor Standards Act of June 25, 1938, 52 Stat. at L. 1069, to recover pay and penalties for overtime. Plaintiff recovered a verdict and defendant has taken rules for judgment n. o. v. and for new trial.

Defendant's first reason for judgment n. o. v. is that a State court has no jurisdiction of a suit brought under this act, for the reason that it is a suit for a penalty. By section 256 of the Judicial Code of the United States, 28 U. S. C. §371, it is provided that the jurisdiction vested in the courts of the United States shall be exclusive of the courts of the several States as to "all suits for, penalties and forfeitures incurred under the laws of the United States". Counsel argues that the double wages provided by the act bear no relation whatever to the damages sustained by the employe by his not receiving his overtime pay and must be construed as a penalty. Counsel cites. Anderson v. Meacham, 62 Ga. App. 145, 8 S. E. (2nd) 459, in which it was held that a State court has no jurisdiction of such a suit brought under the act. Defendant's contention has, however, been oppositely ruled in Hart v. Gregory, 218 N. C. 184, 10 S. E. (2nd) 644, Forsyth v. Central Foundry Co., 198 So. 706 (Ala.), and Tapp v. Price-Bass Co., 147 S. W. (2nd), 107 (Tenn.). The latter two opinions contain extensive discussions and we think represent the weight of reason and of authority.

We point out that section 16(*a*) of the Fair Labor Standards Act of June 25, 1938, 52 Stat. 1069, 29 U. S. C. §216, imposes criminal penalties, but makes no disposition of the jurisdiction, since the Judicial Code, 28 U. S. C. §371 (Judicial Code of March 3, 1911, c. 231, §256, 36 Stat. at L. 1160), vests exclusive jurisdiction of Federal offenses in the Federal courts. Section 17 of the Fair Labor Standards Act, 29 U. S. C. §217, vests jurisdiction of actions to restrain violations in the Federal courts. Then in section 216(*b*), creating the right of action to recover wages, Congress, after establishing the liability of the employer to the employe, in the following language, "Any employer who violates the provisions of section 206 or section 207 of this chapter shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages", goes on to define the forum where the litigant shall recover his wages, as follows: "Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated . . .": 29 U. S. C. §216(b); Act of June 25, 1938, c. 676, sec. 16, 52 Stat. at L. 1069.

Essentially, the action is for wages. Such suits are often for small amounts. The Federal courts are often at a distance from the plaintiff, while the State courts may be more easily accessible. State courts of common pleas are the customary forum of suits to recover wages. It seems to us that "any court of competent jurisdiction" is language perfectly apt to vest jurisdiction in State as well as Federal courts and that such was the likely intent of Congress. The heading of section 216(*b*) is "Penalties; civil and criminal liability". Defendant seeks to draw an inference from the word "penalties". Surely, however, the right to sue for overtime pay which is created immediately after is not a penalty. It is a civil liability, as

is the right to recover "an additional equal amount as liquidated damages". It is true that in some cases the double pay may exceed the actual damage to the plaintiff. It is equally true that in others it may fall short of the damages suffered through the necessity of suing and undergoing the expense and trouble and loss of time incidental to suit. In any case, Congress has, in our opinion, made its intent clear by stating that the double pay shall be considered and recovered as liquidated damages.

"Whatever its technical nature, Congress by giving it the express status of 'liquidated damages' manifested a purpose to exclude it from the operation of the statute (28 U. S. C., §371) which applies to suits for penalties": Tapp v. Price-Bass Co., supra, p. 108. Defendant's first point must therefore be overruled.

Defendant's next contention is that the law does not apply to a workman employed at a weekly wage. Congress, after providing a minimum hourly wage (29 U. S. C. §206) goes on in section 207 to provide maximum hours in a work week, "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed". It is argued that the Wage and Hours Administrator's Regulations as follows, to wit: ". . . for a weekly paid employe, the regular rate of pay is obtained by dividing the weekly wage (including production bonus if any) by the regular (agreed or customary) number of hours worked during that week" (Regulation on Records, sec. 516.4, Interpretation Bulletin no. 4, October 21, 1938) ; finds no sufficient support in the act and is in violation thereof. The nub of defendant's contention is that, since the act says that the employe shall be paid at the rate of one and one-half times the "regular" rate at which he is employed, it must necessarily apply only to persons paid by the hour, since the person paid by the week has no regular hourly rate. He may work in some weeks more hours than in others, therefore his hourly rate would differ each

week if calculated under the regulation. We do not think the word "regular" must necessarily and in all cases mean "unvarying". "Regular" means, in the first place, in accordance with a regula or rule. It does not necessarily imply an unvarying sameness. It may mean normal, agreeable to established, customary forms. The ripples on the seashore are controlled and regulated by the law which permits of an infinite variety. We think a fair interpretation of the word as used is that it means basic or actual hourly pay. Defendant cites Reeves v. Howard County Refining Co., 33 Fed. Supp. 90, decided by District Judge Davidson in the District Court of Texas. After a careful reading of that decision we are unable to conclude that it supports defendant's conclusion. It would seem that the opposite conclusion could be drawn from the McClinton and Fuqua claims. The administrator's rule, adopted and applied in the present case, is entitled to great weight since it is a " 'contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new' ": United States et al. v. American Trucking Assns., Inc., et al., 310 U. S. 534, 549 (60 S. Ct. 1059; 84 L. Ed. 1345); Norwegian Nitrogen Products Co. v. United States, 288 U. S. 294, 315 (53 S. Ct. 350; 77 L. Ed. 796, 807). We find nowhere in section 207 an express or outright exclusion of a person who has been working for a weekly wage, from the benefits of a maximum hour law, nor does it seem plausible that such was intended. Nor can it successfully be maintained that by regular rate is intended "minimum" rate. If Congress had intended the overtime to be paid at one and one-half times the "minimum" legal rate, it could have said so very aptly by using the word "minimum" instead of the word "regular". The fact that it did not so do is a plain indication that it did not so intend. In Emerson v. Mary Lincoln Candies, Inc., 174 Misc. 353, 20 N. Y. Supp. (2nd) 570, it was held that plaintiff, who received a fixed sum

per week, plus a bonus for saving fuel, was entitled to overtime pay, calculated at one and one-half times the hourly rate of pay received by him. The referee, having found that 44 hours a week was intended by the parties to be regarded as a week's work, divided that number of hours into Emerson's fixed weekly pay, in order to determine the "regular rate of pay", and multiplied one and one-half times the quotient by the number of overtime hours, in order to determine the amount of wages owed. See also Emerson v. Mary Lincoln Candies, Inc., 173 Misc. 531, 17 N. Y. Supp. (2nd) 851. The rule for judgment n. o. v. must therefore be dismissed.

Defendant's rule for new trial is based on two grounds, of which the first objects to the court's affirmance, with modification, of one of plaintiff's points for charge, which read, as to the part objected to, as follows: "If you find that plaintiff . . . was employed as a cutter in plaintiff's shoe factory in excess of 44 hours per week", etc. One of the issues at the trial was whether plaintiff fell outside the benefits of the act, by reason of the fact that he was employed in an administrative or executive capacity. Defendant's objection to the point affirmed is that the liability of the employer is not determined by the style or title given to the employe, or by the services originally intended to be performed by him, but by the nature of the work he actually did during the period for which he sued. We find no fault with this statement, but the objection is nevertheless without merit because the word "employed" as used in the point affirmed meant, and could reasonably be taken to mean, "occupied". This construction is supported not only by the judicial as well as the dictionary definitions of the word "employed" (20 C. J. 1240, note 55, Century Dictionary), but by the words, "in excess of forty-four hours", which strongly suggest the meaning of "occupied".

Defendant's remaining point for new trial must be sustained. Plaintiff was employed at a salary of $44 a week. The period for which he sued began October 24,

1938, and ended May 11, 1940. The act provides for compensation for overtime over and beyond 44 hours a week and 42 hours a week, for the first and second years of its operation, respectively. A part of the period sued for fell within each of those years. At the trial defendant admitted that if plaintiff's work was such as to bring his suit within the operation of the act there was some overtime, but contested the number of hours of overtime, particularly with reference to Saturdays. The questions of fact for the jury were: (1) Whether the work was executive or administrative or not, concerning which there was a considerable amount of testimony; (2) how much overtime, if any, existed; (3) the proper amount of money due for it. Since plaintiff worked varying number of hours in various weeks, his regular hourly rate of pay for any week might be computed by dividing his weekly rate by the number of hours worked during such week. For the excess hours, if any, he would then be entitled to receive the hourly pay arrived at by the calculation for the week in question, divided by two. Plaintiff submitted a suggested calculation, which was admitted and sent out to the jury, under a caution that it was not evidence either as to hours, overtime, or amounts due. After the direct evidence of both parties was in, plaintiff called a number of witnesses in rebuttal. The third to the last witness heard by the jury, one John Houck, testified that, "Where the Beckermans are concerned nobody else can be a foreman", and that the foreman was Sam Beckerman. On cross, when he was asked whether plaintiff was the assistant foreman, he answered, "There is nothing like an assistant foreman in the Beckerman Shoe Corporation without a doubt in my mind at all, they are just slave drivers, the scum of the earth, if I may say." This answer was delivered with apparent sincerity and earnest vigor. On motion of counsel for defendant it was stricken out, and shortly afterwards, the testimony being all in, court adjourned until the following morning. At that time counsel for defendant moved to withdraw a juror and continue

the case on the ground of the remark of the witness. The court might well have granted the motion since the remark was highly improper and prejudicial, but from a reluctance to declare a mistrial overruled the motion, with the thought that the verdict might be such as to remove any doubt that the jury had soberly, judiciously, and impartially considered the case without being affected by the remark. The court in its charge cautioned the jury in regard to the remark. After a period of deliberation, the briefness of which impressed the court at the time, in view of the considerable amount of testimony and the issues of fact to be determined arising out of the complex account of the hourly rates and the disputed items of overtime, coupled with a large amount of testimony on the question of nature of bulk of plaintiff's work, the jury brought in a verdict for $1,015.75. The full amount of plaintiff's claim was $995.84, plus interest for eight months and three days.

We are all of opinion that the case must be retried. The question is not of the justice of the verdict, or whether there was evidence, if believed by the jury, to support it. The verdict should be the result and emanation of a fair trial. This is absolutely necessary in order that there may be confidence in verdicts and in judgments thereupon. The remark of the witness Houck, coming as it did almost at the very close of the case, was likely to prejudice defendant and all of defendant's contentions and evidence in the minds of the jury. It was not only highly inflammatory, but bore upon one of the very questions in dispute, the amount of the overtime. To view with complacency or indifference an incident so extraordinarily harmful to defendant would set indeed a novel and a pernicious precedent which could not fail to embarrass the judicial trial of disputes hereafter.

In Naylor et al. v. Poland Coal Company, 67 Pitts. L. J. 708, the court granted a new trial on the ground of "conduct in the presence of the jury, of the grandfather and next friend in this action of the minors, which must have

tended to excite the sympathy of the jury . . ." In Bray v. Township of Hazle, 15 Luzerne L. R. 356, the court after holding that a statement volunteered by a witness tended to influence improperly the decision against the defendant, said: ". . . we cannot say that the caution given them by the Court was sufficient to remove from their minds any impression adverse to the defendant which it may have produced."

In Surface v. Bentz, 228 Pa. 610, the court said:

"It is equally true that for any irrelevant or improper matter tending to prejudice or mislead the jurors and placed before them by a witness, especially by a witness who is also a party, the court should act promptly and protect the party whose cause is exposed to the improper influence upon the minds of the jury. It is quite as necessary to protect a party against the improper remarks to a jury made by a witness as it is against such remarks when uttered by counsel. In either case, it is inexcusable, and the only protection the injured party has must come from the court, and it should act promptly in the matter": id., p. 613.

And it said further:

"We think the motion of the plaintiff's counsel should have been allowed and a juror withdrawn. The witnesses of the defendants, above referred to, those who were parties as well as those who were not parties, manifested much feeling and bias, and in reading the testimony it is apparent that they interjected the objectionable remarks for the purpose of influencing the jury. If such remarks had been made by counsel, our cases show that we would have reversed the court for not withdrawing a juror and continuing the case. The remarks of the witnesses had, perhaps, greater effect with the jury than had they been uttered by counsel. In trials of this character, such remarks by witnesses are not only highly improper, but naturally have a tendency to mislead the jury": id., p. 615.

"While a common instance of a cause for withdrawal is improper remarks by counsel, the right is not restricted

to such cause but extends to remarks made by witnesses for the purpose of influencing the jury": 26 R. C. L. 1021.

Since the case is one for wages, we have given it priority before the various cases before us at this time.

And now, to wit, May 5, 1941, defendant's rule for judgment n. o. v. is discharged; defendant's rule for new trial is made absolute.