## Harrison v. Herzig Building & Supply Co.

April 28, 1942.

446

Wharton Noble for appellant.

H. C. Clay & Sons for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The appeal presents the question of whether a State Court is required or permitted to take jurisdiction of a case founded upon a right of action created by an Act of Congress. The decision calls for the construction of the term "any court of competent jurisdiction," used in the Fair Labor Standards Act of 1938—more popularly known as the Wages and Hours Law, 52 Statutes at Large, 1060, 29 U. S. C. A., Section 201 et seq. The Act which prohibits shipment in interstate commerce of goods produced therefor under conditions denounced by it is a valid exercise of federal constitutional power. United States v. Darby, 312 U. S. 100, 657, 61 S. Ct. 451, 85 L. Ed. 609, 132 A. L. R. 1430.

Pertinent provisions are as follows:

"Sec. 6 [§ 206]. (a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—(1) during the first year from the effective date of this section, not less than 25 cents an hour, (2) during the next six years from such date, not less than 30 cents an hour, * * * * ".

"Sec. 7 [§ 207]. (a) No employer shall, * * * employ any of his employees who is engaged in commerce or in the production of goods for commerce— (1) for a workweek longer than forty-four hours during the first year from the effective date of this section, (2) for a workweek longer than forty-two hours during the second year from such date, or (3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

"Sec. 16 [§ 216]. * * * (b) Any employer who violates the provisions of section 6 or section 7 of this Act [section 206 or section 207 of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

In his petition filed in the Laurel Circuit Court, the appellant, Harry Harrison, alleged that the defendant, Maria Herzig, doing business under the style of Herzig Building and Supply Company, at London, Kentucky, is and was engaged in selling lumber and building material

in Kentucky and adjoining states. He alleged in substance that from October 25, 1938 (the effective date of the Act), to May 1, 1941, he had been employed by the defendant and entitled to receive under the Act a minimum wage of 25 cents an hour for overtime; that he had worked a total of 1,560 overtime hours, for which he should recover $577.20 as wages. He further pleaded the right under Section 16(b) of the Act to recover an additional sum of $577.20 as liquidated damages, and prayed judgment for $1,154.40 and his costs, including a reasonable attorney's fee. The court sustained a special demurrer to the petition and the plaintiff suffered its dismissal by failing to plead further. The sufficiency of the petition, tested by general demurrer, was not passed upon by the circuit court, and we confine ourselves also to the sole question of jurisdiction.

The question is raised by the appellant: Since the National Government has only delegated powers wherein does Congress acquire authority to require the courts of the several states to take jurisdiction of a cause of action wholly created by it? The answer is that such jurisdiction is not conferred by the act of Congress. It merely is recognized. It exists by virtue of the State Constitutions, all of which contain provisions similar to Section 14 of the Constitution of Kentucky, declaring that:

"All courts shall be open and every person, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

In the proper exercise of any delegated power in respect to substantive matters, Congress may take them over and place exclusive jurisdiction in the Federal courts to enforce them both by authority of necessary implication and under Article III, Section 2 of the Constitution of the United States. We have a dual citizenship, with rights and duties appertaining thereto, severally and jointly. Legal remedies for any civil wrong may be enforced as a matter of right in the appropriate state courts save in exceptional instances where jurisdiction has been expressly denied by the Constitution of the United States or by Congress. Grubb v. Public Utilities Commission, 281 U. S. 470, 50 S. Ct. 374, 74 L. Ed. 972. This is not only by virtue of the State Constitutions but by reason of the duty of the State courts to take cog-

nizance of federal laws. It is declared in Article 6 of the Federal Constitution that the judges in every state shall be bound thereby "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." The two courts form one system of jurisprudence, constituting the law of the land, having jurisdiction partly different and partly concurrent. Claflin v. Houseman, 93 U. S. 130, 23 L. Ed. 833. In Mondou v. New York, N. H. & H. R. Co., 223 C. S. 1, 32 S. Ct. 169, 178, 56 L. Ed. 327, 38 L. R. A., N. S., 44, sustaining the constitutionality of the Federal Employers' Liability Act, 45 U. S. C. A., Section 51 et seq., in response to the argument that it imposes duties upon the State court to enforce an act of Congress not in harmony with the policy of the state, the Supreme Court pointed out that Congress "spoke for all the people and all the states, and thereby established a policy for all," and that the policy became as much that of the state as if the act had emanated from its own legislature. The opinion, as do many others, quotes the following pertinent statements from Claflin v. Houseman, supra:

"The laws of the United States are laws in the several states, and just as much binding on the citizens and courts thereof as the state laws are. The United States is not a foreign sovereignty as regards the several states, but is a concurrent, and, within its jurisdiction, paramount, sovereignty. * * * If an act of Congress gives a penalty (meaning civil and remedial) to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the state as it is to recognize the state laws. The two together form one system of jurisprudence, which constitutes the law of the land for the state; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent. * * * It is true, the sovereignties are distinct, and neither can interfere

with the proper jurisdiction of the other, as was so clearly shown by the Chief Justice Taney, in the case of Ableman v. Booth, 21 How. 506, 16 L. Ed. 169; and hence the state courts have no power to revise the action of the Federal courts, nor the Federal the state, except where the Federal Constitution or laws are involved. But this is no reason why the state courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied.''

See Louisville & N. R. Co. v. Scott, 133 Ky. 724, 118 S. W. 990, 19 Ann. Cas. 392, affirmed 219 U. S. 209, 31 S. Ct. 171, 55 L. Ed. 183; Chesapeake & O. Ry. Co. v. Kelly's Adm'x, 161 Ky. 655, 171 S. W. 185, reversed for erroneous instructions 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367; also Knight v. Pennsylvania R. R., 280 Ky. 191, 132 S. W. (2d) 950, which points out that the mere fact that a right of action springs from a Federal statute does not deprive the State courts of jurisdiction. This has been recently reiterated by the Supreme Court in Miles v. Illinois Central R. Co., ... U. S. ..., 62 S. Ct. 827, 86 L. Ed. 766. It is to be borne in mind that any decision concerning a federal law by a state court of last resort may be reviewed by the Supreme Court of the United States, and thus all questions may be eventually and finally determined by it.

Therefore, the power of Congress to leave with or to impose upon the State courts the duty of enforcing the civil remedies provided by the Wages and Hours Law is well founded and definitely settled.

It remains to be seen whether the act of Congress has in fact vested in the Federal courts exclusive jurisdiction of civil cases arising under it. The related phrase in Section 16(b), 29 U. S. C. A., Section 216(b), is ''[An] action to recover such liability may be maintained in any court of competent jurisdiction.'' Such a provision in an act of a State legislature obviously would be confined to courts of that state. So at first impression it would seem the legislative body of the United States must have had reference to courts of that sovereignty only. The impression gathers strength from the fact that the Congress in furthering its legislation of social improvement or in limiting work and raising wages in spite of a willingness of men to contract differently—ac-

cording to one's point of view—has used its power to regulate commerce among the states, not only of transportation but production for it. It is open to the thought that having exercised its superior right to occupy that field of legislation and to use that vehicle to achieve its end, Congress intended to use it all the way and not to divide it for part of the journey with the several states. Furthermore, the Act established three different judicial proceedings for its enforcement, which suggests there should be a unity of jurisdiction. Section 16(a) prescribes criminal penalties; Section 16(b), quoted supra, creates a right of action for damages, and Section 17 authorizes injunctions against the violation of Section 15 of the Act. In its provisions for enforcement it is silent in the matter of criminal penalties, and expressly designates the federal courts as the source of injunctive remedy. In referring to actions at law it speaks of "any court." It may not be doubted that the silence in respect of criminal penalties is because of the certainty of exclusive jurisdiction of courts of the United States over offenses against Federal criminal laws. Section 256, United States Judicial Code, 28 U. S. C. A., Section 371. And it is significant that for one civil remedy resort may be had to the federal court exclusively and for another to either the federal or state court. But in the light of the comprehensive nature of the term "any court," the impression of an intent to restrict jurisdiction to the Federal courts for actions for damages diminishes. It disappears in the view of the unimpairment of the judicial right of the several states as above discussed. The use of the term presupposes the responsibility of the states to enforce rights created by the National Government except where it decrees otherwise.

> "It is a general rule that the grant of jurisdiction to one court does not, of itself, imply that the jurisdiction is to be exclusive. [citations] Upon the state courts, equally with the courts of the Union, rests the obligation to guard and enforce every right secured by the Constitution and laws of the United States whenever those rights are involved in any suit or proceedings before them." United States v. Bank of New York and Trust Company, 296 U. S. 463, 56 S. Ct. 343, 348, 80 L. Ed. 331.

The absence of a provision in an act of Congress restricting jurisdiction for its enforcement to the Federal

courts exclusively is "construed as recognizing that where the cause of action was not penal, but civil and transitory, it was to be subject to the principles governing that class of cases, and might be asserted in a state court as well as in those of the United States." Galveston, H. & S. A. R. R. Co. v. Wallace, 223 U. S. 481, 32 S. Ct. 205, 206, 56 L. Ed. 516; State of Missouri ex rel. St. Louis B. & M. R. Co. v. Taylor, 266 U. S. 200, 45 S. Ct. 47, 69 L. Ed. 247, 42 A. L. R. 1232. The provisions of the Constitution of the United States as to the extent of Federal judicial power (Article III, Section 2) "do not of themselves and without more exclude the jurisdiction of the states"; nor do the provisions of the Judicial Code, Section 256, 28 U. S. C. A., Section 371, purport to exclude the State courts from jurisdiction except where they grant it to the Federal courts. Ohio ex rel. Popovici v. Agler, 280 U. S. 379, 50 S. Ct. 154, 74 L. Ed. 489. The intent to make Federal jurisdiction exclusive must clearly appear. Mondou v. New York, N. H. & H. R. Co., supra; Grubb v. Public Utilities Commission, supra. Concurrent jurisdiction for the enforcement of rights created by Federal law is not uncommon. 21 C. J. S., Courts, Section 526. Therefore, in the absence from the Wages and Hours Law of an express restriction of jurisdiction to the Federal courts it must be held as to rights of action for civil recovery to be the intention of the Congress to extend a choice of courts and to have those actions tried in either Federal or State courts as may be appropriate. Such is the conclusion in Forsyth v. Central Foundry Co., 240 Ala. 277, 198 So. 706.

The conclusion is fortified by the fact that the Act is of vast extent and in its operation is immeasurably prolific of litigation, much of which may involve small sums of money. It is not believed that Congress intended to impose the entire burden of trying these cases upon the Federal courts, but intended interaction and co-operation of the States, some of which, like Kentucky, have embarked on the same social experiment, but confine it to women and children. Section 4767a-1 et seq., Kentucky Statutes Supp. 1939. It is not thought Congress intended to deprive workmen for whom the protection against economic imposition is afforded of the right to resort to the more convenient and cheaper forums of local State courts where frequently they may have quicker dispositions of their cases, and where similar actions under state laws are tried.

Jurisdiction of the State courts of actions brought under the Act has usually been questioned upon the ground that the provision for recovery of double liability and an attorney's fee is of a penalty, which may be recovered only in the Federal courts under the terms of Section 256 of the United States Judicial Code, 28 U. S. C. A., Section 371, relating to penalties and forfeitures. A division of the Court of Appeals of Georgia, upon its interpretation of several opinions of the Supreme Court of the United States, ruled that an action for a sum additional to what was claimed to be due as overtime wages was for a penalty "fixed and incurred under the law of the United States," and held that the employee having elected to bring an action for the penalty was restricted to the Federal court for relief. Anderson v. Meacham, 62 Ga. App. 145, 8 S. E. (2d) 459, 460. When the question of jurisdiction was presented directly to the Supreme Court of Georgia it decided the point to the contrary. Adair v. Traco Division, 192 Ga. 59, 14 S. E. (2d) 466. The opinion quotes the interpretation of the term "penalties and forfeitures" in the Federal Judicial Code, given in Meeker v. Lehigh Valley Railroad Company, 236 U. S. 412, 35 S. Ct. 328, 332, 59 L. Ed. 644, Ann. Cas. 1916B, 691, to be "something imposed in a punitive way for an infraction of a public law, and do not include a liability imposed solely for the purpose of redressing a private injury, even though the wrongful act be a public offense, and punishable as such." The court expressed the conclusion that whether the double liability imposed by the Wages and Hours Law might otherwise come within the purview of the Judicial Code, Congress had characterized it as "liquidated damages" and thereby indicated its intention to be that it should not be regarded as a penalty. The view was fortified by the fact that the phrase "any court of competent jurisdiction" was used in locating the forum for actions under the law. The court followed the reasoning of Forsyth v. Central Foundry Company, supra, in which the Alabama Supreme Court concluded that though Congress cannot by declaration change the nature of a claim to one for liquidated damages when it is but a penalty, it had, nevertheless, manifested an "unmistakable purpose to exclude it from the operation of a statute which applies to penalties and not to a claim for liquidated damages." [240 Ala. 277, 198 So. 710.] This view has also been expressed, and concurrent jurisdiction of State

and Federal courts held to exist, in Hart v. Gregory, 218 N. C. 184, 10 S. E. (2d) 644, 130 A. L. R. 265; Tapp v. Price-Bass Company, 177 Tenn. 189, 147 S. W. (2d) 107; Terner v. Glickstein & Terner, 283 N. Y. 299, 28 N. E. (2d) 846; Emerson v. Mary Lincoln Candies, Inc., 173 Misc. 531, 17 N. Y. S. (2d) 851, affirmed 261 App. Div. 879, 26 N. Y. S. (2d) 489; Stringer v. Griffin Grocery Company, Tex. Civ. App., 149 S. W. (2d) 158, and the classification as a penalty was also rejected in Robertson v. Argus Hosiery Mills, 6 Cir., 121 F. (2d) 285; Hargrave v. Mid-Continent Petroleum Corp., D. C., 36 F. Supp. 233; Stewart v. Hickman, D. C., 36 F. Supp. 861; Campbell v. Superior Decalcominia Company, D. C., 31 F. Supp. 663.

We are of opinion, therefore, that the trial court should have overruled the defendant's special demurrer to the petition and accepted jurisdiction.

Judgment reversed.

Whole Court sitting.