BROOKS PACKING CO. v. HENRY.

No. 30566. May 11, 1943.

137 P. 2d 918.

534

R. R. Linker and F. E. Riddle, of Tulsa, for plaintiff in error.

Elmore A. Page, Paul L. Olney, and W. L. Shirey, all of Tulsa, for defendant in error.

OSBORN, J. William Wesley Henry, hereinafter referred to as plaintiff, instituted this action in the court of common pleas of Tulsa county against Brooks Packing Company, hereinafter referred to as defendant, wherein plaintiff sought recovery of a sum of money alleged to be due him as wages while employed by defendant. Plaintiff's action was predicated upon the Fair Labor Standards Act of 1938, Title 29, U. S. C. A. §§ 201-219, 52 Stat. 1060. Issues were joined and the cause proceeded to trial before a jury. During the course of the trial the facts with reference to the period of employment and the payment of wages were stipulated, and it was agreed that, if plaintiff's employment was within the regulatory pro-

visions of the act, he would be entitled to recover. After the introduction of evidence, the trial court ruled that the employment was within the act and directed a verdict in favor of plaintiff. From a judgment thereon, the defendant has appealed.

Defendant owns and operates a meat packing industry near Tulsa, Okla. Plaintiff entered the employ of defendant on July 9, 1939. His primary duties were those of night watchman, but, in addition thereto, he performed other duties, to which reference will be made later in this opinion. All of the animals slaughtered at the plant are purchased within this state, and all of the meat processed and prepared for market by defendant is sold within this state. It appears that in connection with the slaughter and processing, certain by-products are produced; that about ten per cent of an animal is inedible; that the inedible portions of the carcasses are placed in a tank and cooked and thereafter placed under hydraulic pressure which removes the grease from the tankage; that said grease is known as B-White grease, which grease is used for the manufacture of soaps; that the remaining meat scraps are placed in bags for marketing; that the blood is cooked in the same tank and the dried blood is thereafter marketed for use in the manufacture of ammonia.

C. W. Brooks, the general manager and vice president of defendant company, was called as a witness by plaintiff and testified that during the past three years he had sold tankage, blood, and grease in Missouri, Oklahoma, and Kansas; that probably half of said products were sold in Missouri and the remainder was divided between the States of Oklahoma and Kansas. Certain bills of lading were identified and placed in evidence, showing that from November 3, 1938, to January 25, 1940, a number of shipments of said products were made from defendant company to St. Louis, Mo.

As heretofore stated, plaintiff was employed as a night watchman, but in connection with his duties as such, it

was also shown that he tended the fires, vats, and other utensils used in processing the B-White grease, tankage, and desiccate blood.

The sole question presented herein is whether or not, under the facts as stated, employment of plaintiff was within the regulatory provisions of the Fair Labor Standards Act of 1938. Title 29, U. S. C. A. § 206, in part, provides:

"(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

"(1) during the first year from the effective date of this section, not less than 25 cents an hour,

"(2) during the next six years from the effective date, not less than 30 cents an hour,

"(3) after the expiration of seven years from such date, not less than 40 cents an hour, or the rate (not less than 30 cents an hour) prescribed in the applicable order of the Administrator issued under section 208 of this title, whichever is lower, and

"(4) at any time after the effective date of this section, not less than the rate (not in excess of 40 cents an hour) prescribed in the applicable order of the Administrator issued under section 208 of this title, . . ."

Title 29, U. S. C. A. § 203, in part, provides:

". . . (b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several states or from any state to any place outside thereof. . . .

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any state; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any state. . . ."

The congressional finding and declaration of the policy of the act is found in Title 29, U. S. C. A. § 202, and is stated as follows:

"(a) The Congress hereby finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several states; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce.

"(b) It is hereby declared to be the policy of sections 201-219 of this title, through the exercise by Congress of its power to regulate commerce among the several states, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power. June 25, 1938, c. 676, sec. 2, 52 Stat. 1060."

The motive and purpose of the act is to make effective the conception that interstate commerce should not be made the instrument of competition in the distribution of goods produced under substandard labor conditions, which competition is injurious to the commerce and to the states from and to which the commerce flows. United States v. Darby, 312 U. S. 110, 85 L. Ed. 395, 61 S. Ct. 451, 132 A. L. R. 1430; and Over-night Motor Transp. Co. v. Missel, 316 U. S. 572, 86 L. Ed. 1682. The purpose of the act is to fix wages, not for particular individuals and companies, but industry-wide, on a basis which the industry can stand and under conditions which, if classification is required in the industry, will not give one section of it a competitive advantage over another. Columbus & G. Ry. Co. v. Adm'r of Wage & Hour Division (C.C.A. 5th), 126 F. (2d) 136.

The Fair Labor Standards Act was held to be constitutional in the cases of United States v. Darby, supra, and Opp Cotton Mills, Inc., v. Adm'r of Wage & Hour Division of the Dept. of Labor, 312 U. S. 126, 61 S. Ct. 524, 85 L. Ed. 624.

In the case of Walling, Adm'r, v. Jacksonville Paper Co., 87 L. Ed. 393, it was said:

"The fact that all of respondent's business is not shown to have an interstate character is not important. The applicability of the act is dependent on the character of the employees' work. A. B. Kirschbaum Co. v. Walling, supra (316 U.S. 524, 86 L. Ed. 1648, 62 S. Ct. 1116). If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the act."

In the case of Warren-Bradshaw Drilling Co. v. Hall, 87 L. Ed. 99, it was said:

"The application of the act depends upon the character of the employees' activities. Kirschbaum Co. v. Walling, supra, p. 524. The burden was therefore upon respondents to prove that in the course of performing their services for petitioner and without regard to the nature of its business, they were, as its employees, engaged in the production of goods, within the meaning of the act, and that such production was for interstate commerce. We agree with both courts below that respondents have sustained that burden. . . .

"In section 3 (j) Congress has broadly defined the term, 'produced,' and has provided that 'an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any state.' "

See, also, Walling v. Peoples Packing Co. (C.C.A.) 132 F. 2d 236.

In the case of Hart v. Gregory, 218 N. C. 184, 10 S. E. 2d 644, 130 A. L. R. 265, it was held that a night watchman whose employer was engaged in the business of manufacturing and selling lumber, a part of which was sold outside of the State of North Carolina, whose duties included the pumping of water into boilers so that they would not burn dry but would be fit for service when production started the next day, was engaged in "an occupation necessary to the production of goods" within the meaning of the Fair Labor Standards Act. Therein the court said:

"The United States Department of Labor Interpretative Bulletin No. 1, issued Nov., 1938, at pp. 4 and 5, reads as follows: 'The second category of workers included, those engaged "in the production of goods for (interstate) commerce," applies, typically but not exclusively, to that large group of employees engaged in manufacturing, processing, or distributing plants, a part of whose goods moves in commerce out of the state in which the plant is located. This is not limited merely to employees who are engaged in actual physical work on the product itself, because by express definition in section 3 (j) an employee is deemed to have been engaged "in the production of goods, if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any state." Therefore, the benefits of the statute are extended to such employees as maintenance workers, *watchman,* clerks, stenographers, messengers, all of whom must be considered as engaged in processes or occupations "necessary to the production" of the goods. Enterprises cannot operate without such employees. If they are not doing work "necessary to the production" of the goods they would not be on the payroll.' Although this administrative interpretation is not binding on this court, its reasonableness is persuasive."

Defendant contends for the application of the doctrine of de minimis, and in this connection it is argued that for a merchant who is not engaged in the production of goods for commerce to come within the provisions of the act and place his employees under the act, such merchant must make substantial sales in interstate commerce or must

make sales with knowledge that shipment, sale, or delivery in interstate commerce is intended (see Gerdert v. Certified Poultry & Egg Co., Inc., [D. C.] 38 Fed. Supp. 964), or that occasional shipments of goods of such small quantities, proportionate to the volume of business done, as to be inconsequential, are not sufficient upon which a predicate can be laid for determining that the employees of such company were engaged in interstate commerce. See Fleming v. Atlantic Co. (D. C.) 40 Fed. Supp. 654. The doctrine is not applicable in the instant case in that a substantial portion of the duties of the plaintiff were in connection with the processing of certain by-products of the industry and that the record shows that more than half of said products were sold in interstate commerce.

Defendant further contends that it is entitled to an exemption from the overtime payment provisions of the act for a period of 14 weeks, which contention is predicated upon Title 29, U. S. C. A. § 207, relating to seasonal employment.

Subsection (a) of said section prohibits employment of employees who are engaged in commerce or in the production of goods for commerce for work weeks of longer than certain specified hours, unless such employees receive compensation for employment in excess of the hours specified, at a rate not less than one and one-half times the regular rate at which they are employed. Subsection (b) provides for certain exceptions, one of which is employment for a period or periods not more than 14 work weeks in the aggregate in any calendar year in an industry found by the administrator to be of a seasonal nature. Subsection (c) provides that in the case of an employer engaged in handling, slaughtering or dressing poultry or livestock, the provisions of subsection (a), during the period or periods of not more than 14 work weeks in the aggregate in any calendar year, shall not apply to his employees in any place of employment where he is so engaged.

The issue so presented was before the court in the case of McMillan v. Wilson & Co., Inc., 212 Minn. 142, 2 N. W. 2d 838. That case involved the right of a day watchman for a company engaged in the meat packing business to recover overtime pay under the provisions of the Fair Labor Standards Act. With reference to said contention the court said:

"Nor can defendant secure any reduction of its wage liability under the 'provisions of sec. 7 (c) for a fourteen week moratorium in each calendar year' when the provisions of sec. 7 (a) 'shall not apply to . . . an employer engaged . . . in handling, slaughtering or dressing poultry or livestock,' since, as said by the trial judge, that 'must be construed in the light of its context and the purpose of the act.' Plaintiff's work was not seasonal. His hours and work 'were the same the year around.' In this situation, defendant's claim can have, in fact, 'no rational basis.'"

The burden was upon the plaintiff to prove that, as defendant's employee, he was engaged in the production of goods, within the meaning of the act, and that such production was for interstate commerce. Warren-Bradshaw Drilling Co. v. Hall, supra. An examination of the record in the light of the applicable authorities discloses that plaintiff has amply sustained said burden.

Judgment is affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. BAYLESS, J., absent.