SKELLY OIL CO. v. JACKSON.

No. 31058. April 11, 1944.

Rehearing Denied May 2, 1944.

*148 P. 2d 182.*

184

Brown & Cund, of Duncan, and W. P. Z. German, Alvin F. Molony, and James Marberry, all of Tulsa, for plaintiff in error.

John B. Ogden, of Oklahoma City, and Wilson Wallace, of Ardmore, for defendant in error.

DAVISON, J. This case arises under the Fair Labor Standards Act of 1938, commonly referred to as the Federal Wage-Hour Law (52 Stat. 1060-1069; Title 29 U. S. C. A. §§ 201-219).

The law applies to employees engaged in interstate commerce or in the production of goods for interstate commerce, 52 Stat. 1060 and 1061; 29 U. S. C. A. 202 and 203. Brooks Packing Co. v. Henry, 192 Okla. 533, 137 P. 2d 918. It contemplates the payment of minimum wages and compensation at the rate of 150.% of the regular, as distinguished from the minimum, wage for time worked in excess of maximum hours prescribed by the act. Overnight Motor Transportation Co. v. Missel, 316 U. S. 572, 86 L. Ed. 1682.

By subsection (b) of section 16 of the act, 52 Stat. 1069, title 29 U. S. C. A. § 216:

"(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

The congressional classification of the "additional equal amount as liquidated damages," as distinguished from a penalty, has been judicially approved. Overnight Motor Transportation Co. v. Missel, supra.

The Skelly Oil Company is engaged in the production of oil. It operates the C. T. Glass lease, a producing oil and gas lease, located about ten miles from Duncan, Okla. John L. Jackson was an employee of the company from August 16, 1933, until February 3, 1940, when he was discharged.

On the 19th day of November, 1940, about nine months subsequent to his discharge, Mr. Jackson, as plaintiff, instituted this action in the district court of Stephens county to recover from his former employer alleged unpaid overtime compensation in the sum of $665.04 for work asserted to have been performed by him between and including September 3, 1939, and February 3,

1940, as a pumper on the C. T. Glass lease. He also sought to recover a like sum as liquidated damages and the further allowance of $500 as attorney's fees. The alleged unpaid overtime compensation was computed on a basis of total earned compensation, paid and unpaid for 12 hours per day, five days in the week and 24 hours on the 6th day.

The defendant company in its answer joined issues with the plaintiff. Among other averments it asserted in substance that the plaintiff had been paid in full for all regular and overtime work performed by him.

In March of 1942 the cause was tried to a jury, resulting in a verdict and judgment for the plaintiff for the sum of $1,330.08, in addition to which the trial court awarded plaintiff an attorney's fee in the sum of $250 for the benefit of his attorneys.

The defendant presents the case on appeal. Our continued reference to the parties will be by their trial court designation.

The principal question to be determined in this appeal is whether the hours worked by an oil pumper on a producing lease, on which the pumper lived, are to be computed and determined on the basis of the number of hours during which such pumper under his agreement with the company was required to be on or near the lease and available in the event anything should be required in connection with the operation of the lease, or on the basis of a reasonable computation and agreement as to hours worked which is as great as or greater than the amount of hours actually worked but less than the amount of hours during which the pumper was required to be available.

Five producing wells were on the Glass lease. Pumping was necessary to produce oil. The lease was operated on a full time basis, that is, 24 hours of each day. Prior to September 3, 1939, there was but one pumper on the lease, one James B. Smith. On September 3, 1939, the plaintiff was transferred to the lease as an additional pumper, and thereafter the two shared the duties, responsibilities, and work formerly performed by one. Both of the pumpers lived on the lease.

There is testimony in the record supporting the view that each of the pumpers was responsible for the operation of the wells on the lease during a 12-hour period each day for five days of the week and then on the other two days of the week each alternately assumed responsibility for a full 24-hour period.

The amount of time which plaintiff actually worked while on the lease and responsible for its operation is a subject of dispute under the evidence produced by the parties. Substantial and credible evidence was produced by the company indicating that plaintiff was not busy more than five or five and one-half hours per day, although he was actually paid for more in accord with time sheets prepared by the plaintiff and submitted to the company. The record indicates, however, that plaintiff was encouraged by the company to claim the maximum time per day and week which could be compensated at the regular rate of pay under the Wage-Hour Act, even though he did not actually work during all of the time claimed. Plaintiff's testimony, however, is to the effect that he was induced to falsify the time sheets in the company's favor and refrain from claiming overtime through implied threat of discharge, and that he actually worked in excess of the hours claimed (which in general corresponded to the maximum amount of hours per week which he could work under the Wage-Hour Act for regular as distinguished from overtime pay).

There are numerous details of fact on which the evidence of the parties to this litigation conflict. However, those details need not be reviewed or analyzed in this opinion for the reason that error inheres in the theory upon which this phase of the case was disposed of in the trial court.

Plaintiff's recovery in the trial court was not limited by the time actually

worked nor by any agreement, express or implied, between the parties, whereby he was paid on a computation of time which exceeded or equalled the amount of hours actually worked but which did not equal the amount of time he was subject to call, or was necessarily by implication required to be on or near the premises in order to be available if anything should go wrong with the machinery in operation. On the contrary, he was determined to be entitled to overtime compensation and liquidated damages for the failure of his employer to pay the compensation for time spent by him on or near the lease awaiting the occurrence of some incident requiring his attention, notwithstanding the possible existence of an agreement, express or implied, between himself and his employer that such waiting time should not be computed as overtime.

With reference to the method of computing the number of hours worked the trial court advised the jury by instruction number 3 that:

"You are instructed in connection with the number of hours that the plaintiff worked, you are to consider as work hours any time that the plaintiff, under the terms of his employment, had the responsibility of maintaining and keeping in operation the pumps and other machinery located on the lease of the defendant which were incident to the production of oil from such lease, and *further to count as work hours any time that the plaintiff was obliged to remain on or near the premises where such oil wells of the defendant were located to enable him to carry out such responsibility.*" (Emphasis ours.)

This instruction was excepted to by the defendant at the time it was given. It was an asserted basis of error in the company's motion for new trial in the lower court and in its petition in error filed herein.

The governing law in this case is a federal statute. In interpreting such a statute and determining its force and effect, the decisions of the Supreme Court of the United States are regarded as binding upon the courts of the several states (Chesapeake & Ohio Railway Co. v. Martin, 283 U. S. 209, 75 L. Ed. 983 at 990; Cusack v. Prudential Ins. Co., 192 Okla. 218, 134 P. 2d 984) and the decisions of lower federal courts are persuasive and usually followed unless a conflict between the decisions of such courts makes it necessary to choose between one or more announced interpretations. Our attention has not been called to any decision by the highest federal court determining the precise question under consideration. The decisions of the lower federal courts, as we shall subsequently see, are not in exact harmony on the question, though the reconciliation of apparent conflicts may be possible on the basis of distinctions not necessary to be drawn in this opinion.

Administrative interpretation of a federal statute is a factor entitled to great weight in determining its meaning. United States et al. v. American Trucking Association, 310 U. S. 534, 84 L. Ed. 1345. Such an interpretation is involved in this case. In Interpretative Bulletin No. 13, entitled "Administrator's Opinion" on the question "What Are Working Hours," appearing in Wage and Hour Manual, 1942 Edition, at pages 124 and 125 it is said:

"In some cases employees are engaged in active work for part of the day but because of the nature of the job are also required to be on call for 24 hours a day. Thus, for example, a pumper of a stripper well often resides on the premises of his employer. The pumper engages in oiling the pump each day and doing any other necessary work around the well. In the event that the pump stops (at any time during the day or night) the pumper must start it up again. Similarly, caretakers, custodians or watchmen of lumber camps, during the off season when the camp is closed, live on the premises of the employer, have a regular routine of duty but are subject to call at any time in the event of an emergency. The fact that the employee makes his home at his employer's place of business in these cases does not mean that the employee is necessarily working 24 hours a day. In the ordinary course of events the employee has a normal night's sleep, has

ample time in which to eat his meals and has a certain amount of time for relaxation and entirely private pursuits. In some cases the employee may be free to come and go during certain periods. Thus, here again the facts may justify the conclusion that the employee is not working at all times during which he is subject to call in the event of an emergency, and a reasonable computation of working hours in this situation will be accepted by the Division."

It thus appears that those charged with the practical administration of the law now before us did not interpret it to require or contemplate the method of computing working time which was adopted and approved by the trial court in this case.

In Thompson v. Loring Oil Co., 50 F. Supp. 213 (U. S. District Court, Western District, Louisiana, 1934) it was pointed out that the foregoing administrative interpretation, though not binding upon the courts, is entitled to great weight. Upon consideration of it and prior decisions therein listed, an oil pumper who was claiming unpaid overtime compensation for time he was available for work in addition to time actually worked was denied recovery. In announcing its conclusion on the point the court said:

"If the contention of plaintiff was correct that, because he was subject to call in an emergency during the twelve hours his employer was required to pay him for the full time, including one and a half the rate for all in excess of 40 hours, it would mean the difference between ability to operate and abandonment of strip wells, with the consequent unemployment and loss of production which might otherwise be had. It would seem that a reasonable interpretation of the law and the regulations, as found by the Board, entitled the employee to pay only for the time he actually worked or was in position to perform some service on which he was subject to call only when needed."

In the case of Reeves v. Howard County Refining Co., 33 F. Supp. 90, O. A. Owens, a pumper, was denied unpaid overtime compensation on the theory that a binding contract relating to hours to be worked had been entered into between himself and his employer and that he had been paid for regular and overtime in connection therewith. The case is not helpful on the question of whether hours during which an employee who lives on the lease where he works is available for work should be considered in computing hours of work.

The case of Skidmore v. Swift & Co., 136 F. 2d 112 (C. C. A. Fifth Circuit) is enlightening. Therein firemen and elevator operators were claiming unpaid overtime compensation and liquidated damages for alleged working hours during which they were available for work but not working. The denial of liability in the trial court was approved by the circuit court. In treating and disposing of the point it was said:

"Plaintiffs were firemen or elevator operators or relief firemen, none of whom regularly worked more than the minimum hours per week, unless time spent at the fire hall subject to call in case of an alarm is held to be 'working.'

"Plaintiffs orally agreed that in addition to their regular eight-hour duties they would remain in the fire hall or within hailing distance thereof, three and one-half to four nights each week so as to be available in the event of an alarm. On these nights they were not required to perform any tasks except to answer alarms, for which they received extra pay. . . .

"The Act does not require payment of wages to an employee merely because he is away from home. Nor does the Act undertake to regulate or restrict reasonable and bona fide agreements whereby an employee agrees to be available if needed. 'Working' is not synonymous with 'availability for work.'

"Plaintiffs, in their proof, have failed to segregate sleeping time from non-sleeping, pool, domino, and radio, playing time. Even if the plaintiffs had been entitled to recover for hours spent in boredom, or waiting for bedtime, or an alarm, the proof wholly fails to prove the actual hours spent either in sleeping, playing pool, dominoes, or radio, dressing, shaving, bathing, or in any of

said enterprises, the burden of which was on the plaintiffs."

In the case of L. Metcalfe Walling v. A. H. Belo Corporation, 316 U. S. 624, 86 L. Ed. 1716, at 1723, it was said:

". . . When employer and employees have agreed upon an arrangement which has proven mutually satisfactory, we should not upset it and approve an inflexible and artificial interpretation of the Act which finds no support in its text and which as a practical matter eliminates the possibility of steady income to employees with irregular hours. Where the question is as close as this one, it is well to follow the congressional lead and to afford the fullest possible scope to agreements among the individuals who are actually affected. . . ."

Notice, generally, cases collected in annotation appearing in 140 A. L. R. 1263, at 1265 et seq., and see Super-Cold Southwest Co. v. McBride, 124 F. 2d 90; Jesse Bumpus v. Continental Baking Co., 124 F. 2d 549, 140 A. L. R. 1258.

Upon consideration of the foregoing authorities, we conclude that a reasonable, bona fide, and binding agreement with reference to the method of computing hours worked may exist between an oil pumper and his employer whereby such pumper is paid regular and overtime compensation for hours actually worked or in excess of those actually worked, and that such pumper may, pursuant to agreement, remain available for work on or near the lease where he lives, during at least a reasonable portion of the remainder of the day, without imposing on his employer liability for unpaid overtime compensation and liquidated damages connected therewith.

In this case the trial court assumed, or decided as a matter of law, that such a reasonable and bona fide agreement did not exist and gave an instruction under which overtime unpaid compensation and liquidated damages could be awarded by the jury for hours available for work as distinguished from hours worked. This was error in view of the conflicting proof on the existence of a reasonable agreement free from duress as well as the conflict in the evidence as to the number of hours actually worked.

The computation of time approved by the jury was based upon 12 hours for five days per week and 24 hours one day per week. It is thus probable that plaintiff was allowed compensation for overtime and liquidated damages for time available for work when not working, in spite of the existence of a reasonable agreement that such time would not be computed.

The question of whether such a reasonable agreement did exist should have been submitted to the jury as one of fact in this case. If it did exist, unpaid compensation and damages for overtime should have been based upon overtime hours actually worked as distinguished from hours available for work. The instruction of the trial court should have been drafted accordingly.

Our attention has been called to Fleming, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. Rex Oil and Gas Co., 43 F. Supp. 950 (U. S. Dist. Ct., W. D. of Michigan), which contains language lending color of support to the instructions given by the trial court.

An examination of that case fails to reflect the presence of evidence tending to prove the existence of a reasonable and bona fide agreement for computation of hours worked. The opinion likewise fails to reflect whether the oil pumper therein involved lived on the lease.

Other cases have been called to our attention involving intermittent hours of actual work where presence at a place of business of the employer away from the home of the employee was required. These cases we regard as distinguishable from the case at bar. Southern Ry. Co. v. Black et al., 127 F. 2d 280; Travis v. Ray, 41 F. Supp. 6.

The defendant also questions the sufficiency of the evidence to establish

that plaintiff was engaged in the production of goods for interstate commerce. Since this case must be retried, on which retrial the proof may be more ample, and since this court has already reviewed at length the tests by which that question should be determined (Brooks Packing Co. v. Henry, supra), we shall not herein discuss the question.

The suggestion is also contained in the brief of the defendant that an employee may enter into an agreement as to the computation of hours which operates to waive compensation for overtime actually worked. This position is untenable. Travis v. Ray, supra; Sklar Oil Corp. v. Thompson, 126 F. 2d 872.

This cause is reversed and remanded to the trial court, with directions to proceed in a manner not inconsistent with the views herein expressed.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, WELCH, HURST, and ARNOLD, JJ., concur.