[No. 29384.  *En Banc.*  January 26, 1945.]

Ross Cannon, *Respondent,* v. Addison Miller *et al.,*
*Appellants.*

C. A. Barger, *Respondent,* v. Addison Miller *et al.,*
*Appellants.*[1]

[1] Reported in 155 P. (2d) 500.

*C. E. H. Maloy,* for appellants.

*F. L. Morgan,* for respondents.

*W. E. Heidinger* and *Oliver Malm, amici curiae.*

STEINERT, J.—Two plaintiffs brought separate actions against identical defendants to recover unpaid wages, overtime compensation, liquidated damages, and attorneys' fees, alleged to be due and owing to plaintiffs, or recoverable by them, respectively, under the provisions of the fair labor standards act of 1938 (52 Stat. 1060 to 1069, incl.; 29 U. S. C. A., §§ 201 to 219, incl.). The causes were consolidated for trial and were heard by the court sitting without a jury. At the conclusion of the evidence, and after taking the matter under advisement, the court made findings and conclusions, upon which it entered a single judgment granting to both of the plaintiffs the relief sought. Defendants appealed, and, upon the appeal, the causes have again been consolidated for hearing and disposition.

Respondents predicated their actions upon §§ 6 and 7 of the fair labor standards act of 1938 (52 Stat. 1062, 1063; 29 U. S. C. A., §§ 206, 207). Section 6 of that act provides that every employer shall pay to each of his employees who "is engaged in commerce or in the production of goods for commerce" certain prescribed minimum wages. Section 7 of the act provides that no employer shall employ any of such employees for a longer work week than as specified in that section, unless such employee receives compensation for the excess hours of his employment at a rate not less than one and one-half times the regular rate at which he is employed. We shall hereinafter use the term "overtime compensation" to designate the increased compensation for overtime work.

Appellants' first assignment of error is directed to the action of the trial court in overruling their objections to the introduction of any testimony, the ground assigned for the objections being that the respective complaints did not state facts sufficient to constitute a cause of action.

Omitting its formal parts, the complaint of the respondent Cannon alleged that the appellants at all times here involved were engaged in business in this state under special contract with Northern Pacific Railway Company, Chicago, Milwaukee & St. Paul Railway Company, and Oregon-Washington Railway Company, and by virtue of such contract were engaged in, and connected with, trade, commerce, transportation, transmission, and communication among the several states, that is to say, in interstate commerce; that for a number of years last past, since the passage of the fair labor standards act of 1938, respondent Cannon was employed by appellants as a watchman and laborer in the performance of appellants' contract with the above-named railroad companies; that in the performance of such labor respondent came within the provisions, and was entitled to the benefits, of the Federal act above mentioned; that continuously during the period alleged in the complaint respondent received less wages and was employed for work weeks of longer hours than those required or permitted by that act; and that under the provisions of that same act

respondent became entitled to a judgment against the appellants in double the amount of a specified sum representing a balance of wages owing to him for both straight time work and overtime work, together with an attorney's fee to be fixed by the court.

The complaint of the respondent Barger contained virtually the same allegations as those of the Cannon complaint and, in addition, gave a more detailed statement of appellants' activities under the alleged contract with the railroad companies and of Barger's connection with such activities, all of which, it was alleged, involved the performance of services in watching, guarding, firing, and "hostlering" railway engines used in interstate and foreign commerce.

Appellants did not move to make the complaints more definite and certain, nor did they by demurrer raise any question as to the sufficiency of the allegations thereof to constitute causes of action. Instead, appellants filed their answers and amended answers denying the material allegations of the two complaints and, in addition, setting up as affirmative defenses (1) the two-year statute of limitations, and (2) a claim that the wage and hour provisions of the fair labor standards act did not apply to the respondents, by reason of the alleged fact that respondents were engaged in a service establishment, the greater part of whose servicing was in *intrastate* commerce, as provided for in subdivision (a) (2) of § 13 of the Federal act (52 Stat. 1067; 29 U. S. C. A., § 213 (a) (2)). Respondents replied, denying the allegations of the affirmative defenses.

Issues having been joined, the two causes were consolidated and the trial began. After the first witness, respondent Barger, had taken the stand and had testified in answer to a few preliminary questions, appellants objected to the introduction of any further evidence on his behalf, on the ground that his complaint did not state facts sufficient to constitute a cause of action. The same objection was later interposed when respondent Cannon took the stand. In each instance, respondents' counsel at once demanded that appellants point out wherein the complaints were deficient. Appellants made no effort to comply with the de-

mand. The trial court overruled appellants' objection for the nonce, but at the same time stated that it would be reconsidered at the conclusion of all the evidence. The trial then proceeded, and respondents offered their evidence, further reference to which will be made a little later herein.

The specific contention made by appellants upon this first assignment of error is that the complaints did not plead any facts showing that the work performed by respondents was in interstate commerce or was so closely related to the movement of goods in interstate commerce as to form a part thereof, and that respondents' allegations touching that subject were mere conclusions.

■ While the overruling of a demurrer to a complaint or the failure to interpose a demurrer thereto does not preclude the adverse party, at the calling of the case for trial, from objecting to the introduction of any evidence on the ground that the complaint does not state facts sufficient to constitute a cause of action, nevertheless, if the complaint be for the first time attacked in the last-mentioned manner, the pleading will be liberally construed and, in passing upon such objection, the court will bring to the support of the pleading every reasonable intendment and legitimate inference that may be drawn from its allegations and also from the evidence adduced to sustain the plaintiff's cause. *O'Day v. Ambaum,* 47 Wash. 684, 92 Pac. 421, 15 L. R. A. (N. S.) 484; *Hamilton v. Johnson,* 137 Wash. 92, 241 Pac. 672; 41 Am. Jur. 516, 517, Pleading, §§ 327, 328.

■ Another well-settled rule applicable to a situation such as the one presented here is that, if substantial facts which constitute a cause of action are stated in the complaint or petition, or can be inferred by reasonable intendment from the matters which are set forth therein, although the allegations of these facts are in effect conclusions of law, or are otherwise imperfect, incomplete, or defective, such insufficiency pertaining to the form rather than to the substance of the pleading, the proper mode of correction is not by demurrer nor by excluding evidence at the trial, but by a motion before trial to make the averments more definite and certain by amendment. *Harris v. Halver-*

*son,* 23 Wash. 779, 63 Pac. 549; *Grout v. Tacoma Eastern R. Co.,* 33 Wash. 524, 74 Pac. 665; *Loveday v. Parker,* 50 Wash. 260, 97 Pac. 62; *Ankeny v. Pomeroy Grain Growers, Inc.,* 170 Wash. 1, 15 P. (2d) 264.

In the light of these rules, and under the circumstances here presented, the complaints were, in our opinion, sufficient to withstand appellants' motion to exclude the evidence and likewise sufficient to permit proof in support of respondents' causes of action as alleged therein.

Appellants next assign as error the action of the trial court in overruling their challenge to the legal sufficiency of respondents' evidence and denying their motions for nonsuit and dismissal of respondents' actions. The contention made by appellants on this assignment is that respondents failed to prove by their evidence that they were engaged in interstate commerce or that their activities were so closely related to the movement of such commerce as to form a part thereof. Respondents' evidence on that subject may be summarized as follows:

At all times involved herein, appellants were general labor contractors engaged in the business of employing and supplying laborers to perform services for other employers, including railroad companies. Pursuant to a special contract made with the Northern Pacific Railway Company, appellants supplied certain workmen, including respondents herein, for work in connection with the servicing and movement of trains of the three railroad companies previously mentioned. Cannon was employed in a railroad yard at Hoquiam; Barger was stationed at Elma. Their duties were those of watchmen and railroad hostlers. The railroad companies, particularly the Northern Pacific Railway Company, operated a number of engines between local points within this state. At the end of each day's run the engine, or engines, would be turned over to Cannon or Barger at the particular yard where the one or the other was employed. During the night and until the train crew called for the locomotive on the next morning, respondents would watch the engines which had been put in their respective charges and would completely service them by shoveling

coal into the tenders, sanding the domes, wiping and cleaning various parts of the mechanisms, supplying water for the boilers, and keeping up steam.

While these particular locomotives were not operated beyond the state's boundaries, they nevertheless drew freight trains which consisted, in part, of cars carrying freight between this state and other states. Contrary to the claim made by the appellants in their brief, the record as brought to us indicates that respondents introduced substantial evidence to the effect that the engines upon which respondents performed their regular daily services were constantly used to move trains devoted in part to transportation of goods in interstate commerce. Their evidence also established that during the period here involved they had worked the number of hours and had been paid the amount of wages found by the trial court; and that the number of hours worked by them was greater, and the amounts of wages paid to them were less, than those prescribed by the fair labor standards act.

Appellants, on the other hand, introduced no evidence whatever, and the trial court specifically found that the services rendered by respondents were in connection with the movement and transfer of goods and merchandise in interstate commerce and that such services were essential and necessary to such movement of goods. Appellants have not assigned error specifically as to any of these findings, but contend, rather, that the evidence is not legally sufficient to sustain any recovery under the Federal act here involved.

█ It is true, as stated by appellants, that the law is now well settled that the application of the fair labor standards act depends upon the character of the employee's activities rather than upon the nature of the business of the employer. *Kirschbaum Co. v. Walling,* 316 U. S. 517, 86 L. Ed. 1638, 62 S. Ct. 1116; *Walling v. Jacksonville Paper Co.,* 317 U. S. 564, 87 L. Ed. 460, 63 S. Ct. 332; *Warren-Bradshaw Drilling Co. v. Hall,* 317 U. S. 88, 87 L. Ed. 83, 63 S. Ct. 125; *Overstreet v. North Shore Corp.,* 318 U. S. 125, 87 L. Ed. 656, 63 S. Ct. 494; *McLeod v. Threlkeld,* 319 U. S. 491, 87 L. Ed.

1538, 63 S. Ct. 1248; *Jax Beer Co. v. Redfern* (C. C. A. 5th), 124 F. (2d) 172; *Walling v. Mutual Wholesale Food & Supply Co.* (C. C. A. 8th), 141 F. (2d) 331; *Baggett v. Henry Fischer Packing Co.* (D. C. Ky.), 37 F. Supp. 670; *Fleming v. Goldblatt Bros.* (D. C. Ill.), 39 F. Supp. 701; *Gavril v. Kraft Cheese Co.* (D. C. Ill.), 42 F. Supp. 702; *Samuels v. Houston* (D. C. Ga.), 46 F. Supp. 364; *Lofther v. First Nat. Bank of Chicago* (D. C. Ill.), 48 F. Supp. 692; *Barbe v. Cummins Const. Co.* (D. C. Md.), 49 F. Supp. 168; *Murphy v. Georgia Aero-Tech.* (D. C. Ga.), 49 F. Supp. 982; *Sykes v. Lochmann,* 156 Kan. 223, 132 P. (2d) 620; *Dennis v. Equitable Equipment Co.,* 7 So. (2d) (La. App.) 397; *Helt v. Britten-Fenton Co., Inc.,* 180 Misc. 1076, 42 N. Y. S. (2d) 362; *Brooks Packing Co. v. Henry,* 192 Okla. 533, 137 P. (2d) 918.

It is also true, as contended by the appellants, that the burden of proof is on the employee to establish by a preponderance of the evidence that his activities constitute an engagement in interstate commerce or interstate transportation. *Warren-Bradshaw Drilling Co. v. Hall, supra; Zehring v. Brown Materials, Ltd.* (D. C. Cal.), 48 F. Supp. 740; *Drake v. Hirsch* (D. C. Ga.), 40 F. Supp. 290; *Timberlake v. Day & Zimmerman, Inc.* (D. C. Iowa), 49 F. Supp. 28; *Muldowney v. Seaberg Elevator Co.* (D. C. N. Y.), 39 F. Supp. 275.

Where it is established, however, that a substantial part of the employee's activities is so intimately connected with or related to interstate commerce or the movement thereof that it can reasonably be said to be an essential part of the production or transportation of goods for such commerce, the employee is covered by the act. *Kirschbaum Co. v. Walling, supra; Walling v. Jacksonville Paper Co., supra; Collins v. Kidd Dairy & Ice Co.* (C. C. A. 5th), 132 F. (2d) 79; *Walling v. Peoples Packing Co.* (C. C. A. 10th), 132 F. (2d) 236; *Walling v. Silver Bros. Co.* (C. C. A. 1st), 136 F. (2d) 168; *Divine v. Levy* (D. C. La.), 39 F. Supp. 44; *Camfield v. West Texas Utilities Co.* (D. C. Tex.), 44 F. Supp. 847; *Samuels v. Houston* (D. C. Ga.), 46 F. Supp. 364; *Ashenford v. L. Yukon & Sons Produce Co.,* 172 S. W. (2d) (Mo. App.) 881; *In re New York Title & Mtg. Co.,* 179 Misc. 789,

39 N. Y. S. (2d) 893; *Horton v. Wilson & Co.*, 223 N. C. 71, 25 S. E. (2d) 437; *Brooks Packing Co. v. Henry*, 192 Okla. 533, 137 P. (2d) 918; *Johnson v. Phillips-Buttorff Mfg. Co.*, 178 Tenn. 559, 160 S. W. (2d) 893.

In our opinion, there can be no doubt that the services performed by the respondents in this instance were so closely and intimately connected with the operation of the trains as to form a part of such operation. Those services were as essential and indispensable with respect to the transportation of goods as were the services of the engineers or firemen who actually operated the engines; for, if the locomotives had not been watched, guarded, cleaned, re-fueled, and kept supplied with steam during the night, they could not have been used the next day in hauling the loads of freight. In volume 87 of Lawyer's Edition at page 87, following the opinion in the case of *Warren-Bradshaw Drilling Co. v. Hall, supra,* will be found an extensive annotation on the subject of what employees are engaged in interstate commerce, or in the production of goods for interstate commerce, within the fair labor standards act. The cases therein referred to hold, generally, that watchmen, guards, etc., are engaged in interstate commerce within the meaning of the fair labor standards act if a substantial part of their activities is so closely related to interstate commerce as to be, in practice and in legal contemplation, a part thereof.

In this connection appellants further contend that the burden was upon the respondents to point out and prove what part of their work was in intrastate commerce and what part was in interstate commerce; they also contend that respondents would not be entitled to recover overtime compensation and liquidated damage other than for that part of their work which was in interstate commerce.

It is true that respondents did not show what proportion of the freight drawn by the engines which they serviced was in interstate commerce. They did show, however, that a substantial amount of it was of that character. It is clear from the record in this case that respondents' activities were not segregated as between interstate and intrastate

business, but were commingled and were indiscriminately performed with respect to both. So far as the record discloses, appellants made no attempt to apportion respondents' wages or hours of work as between intrastate and interstate employment and manifestly it would have been impossible for respondents themselves to do so. The fact is that respondents served upon appellants, prior to the time of the trial, several notices to produce all of their records bearing upon the issues here involved, but appellants failed to comply with the demand.

By showing that a substantial part of their work was devoted to interstate business, respondents made a *prima facie* case entitling them to recovery under the fair labor standards act and casting upon the appellants the burden of coming forward with evidence tending to prove that respondents' activities, whether in whole or in part, were not of an interstate character and, to a corresponding extent, were not within the protection of the act. As stated before, however, appellants offered no evidence at all, but submitted the case for decision on the evidence produced by the respondents. Our view of the law upon this phase of the controversy is succinctly expressed in a headnote to the recent case of *Guess v. Montague* (C. C. A. 4th), 140 F. (2d) 500, as follows:

"In action for unpaid minimum wages and overtime compensation, under the Fair Labor Standards Act, where plaintiffs worked on interstate and intrastate business and the two classes of business were commingled in the employer's operations and the employer did not attempt to distinguish between the two in payment of wages, plaintiffs made a prima facie showing entitling them to recovery."

Accord: *United States v. Darby*, 312 U. S. 100, 85 L. Ed. 609, 61 S. Ct. 451, 132 A. L. R. 1430; *Camfield v. West Texas Utilities Co.* (D. C. Tex.), 44 F. Supp. 847.

Upon this assignment, we hold, as did the trial court, that the evidence as above outlined was legally sufficient to sustain a recovery by the respondents.

Appellants next assign error upon the admission in evidence of a certified copy of a judgment rendered by the

United States district court of Minnesota, and upon findings of fact XV and XVI made by the trial court in the case at bar with reference to a stipulation entered into by the appellants in the Minnesota action. The judgment in that case purported to enjoin these appellants from violating the provisions of the fair labor standards act and to direct them to perform the provisions of the stipulation, in which, as the trial court in the case at bar found, the appellants had agreed to pay to all of their employees, including the respondents herein, such amounts as were found to be due them for back pay under §§ 6 and 7 of the fair labor standards act.

For several reasons, these assignments of error are without substantial merit: (1) Although the trial judge did admit in evidence the certified copy of the Minnesota judgment "for what it is worth," he at the same time stated explicitly that he did not consider it as having any value; (2) the trial court made an express finding to the effect that it appeared from the evidence in the case, "independent of said stipulation," that the employment of the respondents by the appellants "brought them fairly and squarely within the provisions of the fair labor standards act"; (3) as a matter of fact, the trial court recited in detail the facts upon which it found that respondents were entitled to recover, and those particular recitals made no mention of the previous judgment or stipulation; and (4) assuming that the certified copy of the judgment and stipulation in the Minnesota action were improperly admitted as evidence in this case and should therefore be disregarded, we are nevertheless of the opinion that the other evidence in the case was legally sufficient to bring the respondents within the protection of the act.

Under another assignment of error appellants contend that respondents are estopped and precluded from recovering overtime compensation and liquidated damages because they reported to the appellants their straight time and overtime and were paid in full according to those reports. The record discloses that respondents regularly reported to the appellants the time spent in their employ-

ment, but that they were paid less than what they were entitled to receive if they were within the protection of the fair labor standards act.

A sufficient answer to appellants' contention is that no estoppel is pleaded. Aside from that, however, the fact that respondents accepted checks for lesser amounts would not of itself preclude them from collecting the balance lawfully owing to them; for, otherwise, the employer would thus be permitted to relieve himself of the liability imposed upon him as a result of his own violation of the Federal act. *George Lawley & Son Corp. v. South* (C. C. A. 1st), 140 F. (2d) 439; *Guess v. Montague* (C. C. A. 4th), 140 F. (2d) 500; *Travis v. Ray* (D. C. Ky.), 41 F. Supp. 6; *Rigopoulos v. Kervan* (D. C. N. Y.), 47 F. Supp. 576; *Bailey v. Karolyna Co. Ltd.* (D. C. N. Y.), 50 F. Supp. 142; *Garrity v. Bagold Corp.*, 180 Misc. 120, 42 N. Y. S. (2d) 257; *Walsh v. 515 Madison Avenue Corp.*, 181 Misc. 443, 42 N. Y. S. (2d) 262.

Under their final assignment of error appellants contend that actions brought under the fair labor standards act are, in this state, governed by the two-year statute of limitations, and that, therefore, respondents cannot, in any event, recover for any part of the period of their employment prior to two years before the filing of their respective complaints. Respondents, on the other hand, contend that the three-year statute applies. *Amici curiae* have filed a brief in support of the position taken by appellants on this one point.

Section 16b of the fair labor standards act (52 Stat. 1069; 29 U. S. C. A., § 216(b) ) provides that any employer who violates the provisions of §§ 6 or 7 of the act, relating, respectively, to minimum wages and maximum hours of employment, shall be liable to the employee or employees affected, in the amount of their unpaid minimum wages, or their unpaid overtime compensation as the case may be, and in an additional equal amount as liquidated damages, and that, in any action brought by an employee to recover such liability, the court shall award to the plaintiff a reasonable attorney's fee to be paid by the defendant.

The fair labor standards act does not itself prescribe any period of limitation within which an action must be commenced by an employee seeking to recover overtime compensation, liquidated damages, and attorney's fees as provided in the act. The statute of limitations of the state wherein the action is brought is therefore applicable. *McClaine v. Rankin*, 197 U. S. 154, 49 L. Ed. 702, 25 S. Ct. 410; *Loggins v. Steel Const. Co.* (C. C. A. 5th), 129 F. (2d) 118; *Klotz v. Ippolito* (D. C. Tex.), 40 F. Supp. 422; *Divine v. Levy* (D. C. La.), 45 F. Supp. 49; *Abram v. San Joaquin Cotton Oil Co.* (D. C. Cal.), 46 F. Supp. 969; *Shannon v. Boh Bros. Const. Co.*, 8 So. (2d) (La. App.) 542.

Respondents rely upon Rem. Rev. Stat. (Sup.), § 159 [P. C. § 8166], which provides that the following actions must be commenced within three years after the cause of action shall have accrued:

"(3) An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument. . . .

"(6) . . . an action upon a statute for penalty or forfeiture, where an action is given to the party aggrieved, or to such party and the state. . . ."

Appellants rely upon Rem. Rev. Stat., § 165 [P. C. § 8172], sometimes referred to as the "catch-all" statute, which provides:

"An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued."

If the action is not governed by either of the two subdivisions 3 and 6 of § 159, then concededly it is controlled by § 165.

Subdivision 6 of § 159, quoted above, may readily be eliminated from further consideration, since that subdivision relates only to a penalty or forfeiture, and it is now well settled by judicial decision that an action brought under § 16b of the fair labor standards act for overtime compensation and liquidated damages is not an action for a penalty or forfeiture, but one for compensation. *Overnight Motor Transp. Co. v. Missel*, 316 U. S. 572, 86 L. Ed. 1682, 62

S. Ct. 1216; *Hargrave v. Mid-Continent Petroleum Corp.* (D. C. Okla.), 36 F. Supp. 233; *LaGuardia v. Austin-Bliss General Tire Co.* (D. C. N. Y.), 41 F. Supp. 678; *Maddox v. Jones* (D. C. Ala.), 42 F. Supp. 35; *Divine v. Levy* (D. C. La.), 45 F. Supp. 49; *In re Fulnau Corp.* (D. C. N. Y.), 49 F. Supp. 570; *Rigopoulos v. Kervan* (D. C. N. Y.), 53 F. Supp. 829; *Philpott v. Standard Oil Co.* (D. C. Ohio), 53 F. Supp. 833; *Forsyth v. Central Foundry Co.*, 240 Ala. 277, 198 So. 706; *Adair v. Traco Division,* 192 Ga. 59, 14 S. E. (2d) 466; *Harrison v. Herzig Bldg. & Supply Co.,* 290 Ky. 445, 161 S. W. (2d) 908; *Moreno v. Picardy Mills,* 173 Misc. 528, 17 N. Y. S. (2d) 848; *Tapp v. Price-Bass Co.,* 177 Tenn. 189, 147 S. W. (2d) 107; *Tidewater Optical Co. v. Wittkamp,* 179 Va. 545, 19 S. E. (2d) 897.

Turning, next, to subdivision 3 of § 159, we note that it refers only to an action *upon a contract or liability,* express or implied. It is now firmly established in this state that this subdivision of § 159 covers *contractual* liability only and does not include a liability created by statute. *Noble v. Martin,* 191 Wash. 39, 70 P. (2d) 1064, and cases therein cited, including cases from this court and also *McClaine v. Rankin, supra,* from the United States supreme court.

The question then to be determined in this case is whether an action to recover overtime compensation, liquidated damages, and attorney's fees, as provided by the fair labor standards act, is an action upon *contract* or an action upon a *liability created by statute.*

The phrase "liability created by statute" means a liability which would not exist but for the statute. 37 C. J. 783, Limitation of Actions, § 123; 25 Words & Phrases (Perm. ed.) 61 *et seq.* As stated in *Oregon-Washington R. & N. Co. v. Seattle Grain Co.,* 106 Wash. 1, 8, 178 Pac. 648, 650, 185 Pac. 583:

"A liability created by statute is one in which no element of agreement enters. It is an obligation which the law creates in the absence of an agreement."

There are cases from the Federal courts which hold that claims such as those presented by the respondents in this

instance are contractual, on the theory that the statutory obligations contained in the fair labor standards act are read into and become a part of the employment contract between the employer and the employee subject to the terms of the act; and that the liability is for wages due employees under working agreements which the Federal statutes require employer and employee to make. *Loggins v. Steel Const. Co.* (C. C. A. 5th), 129 F. (2d) 118; *Northwestern Yeast Co. v. Broutin* (C. C. A. 6th), 133 F. (2d) 628; *Cunningham v. Weyerhaeuser Timber Co.* (D. C. Wash.), 52 F. Supp. 654.

There are other Federal court decisions which hold that although the liability is of a *contractual nature*, yet the obligation of the employer to pay overtime compensation and liquidated damages arises solely by virtue of the statute and is therefore to be classified as a liability created by statute. *Lorenzetti v. American Trust Co.* (D. C. Cal.), 45 F. Supp. 128; *Abram v. San Joaquin Cotton Oil Co.* (D. C. Cal.), 46 F. Supp. 969; *Drenne v. Mutual Life Ins. Co. of New York*, 42 N. Y. S. (2d) 259; *Walsh v. 515 Madison Avenue Corp.*, 181 Misc. 443, 42 N. Y. S. (2d) 262.

In the determination of the question immediately before us, we are not controlled by any particular Federal court decision, or any particular group of such decisions, but are free to accept the reasoning which appears to us the more logical and to follow those cases which appeal to us as being the more convincing.

It seems plain that, except for the provisions of the fair labor standards act, appellants would be under no obligation whatever to pay overtime compensation, liquidated damages, or attorney's fees. This is but another way of saying that, except for the Federal act, respondents would have no cause of action for such returns. In other words, the statute, rather than a contract whether express or implied in fact, is the foundation upon which respondents' actions must rest. In this instance, the statute alone created the obligation, and the law imposes upon it a fictitious promise to pay, in order that the contractual remedy of *assumpsit* may be made applicable thereto. The legal duty

thus created, though of a contractual nature, is not a contract in any real sense, but only in a fictional sense, and constitutes what is designated as a quasi-contract or constructive contract. 12 Am. Jur. 502, Contracts, § 6. In *Edwards v. Surety Finance Co.,* 176 Wash. 534, 30 P. (2d) 225, this court described such duties or obligations in the following language:

"In addition to such contracts as draw their efficacy from the consent of the parties, there is a class of legal obligations which, though of a contractual nature, are not based on contract or consent. These are sometimes spoken of as contracts implied in law, but are usually referred to as quasi, or constructive, contracts. For the purpose of applying the contractual remedy of *assumpsit,* the law imposes upon such obligation a fictitious promise to pay. The liability upon an obligation of this kind arises purely upon an implication of law, independent of agreement or intention. The law in such cases establishes a duty which may be contrary to the intention of either one, or both, of the parties."

In *Bicknell v. Garrett,* 1 Wn. (2d) 564, 96 P. (2d) 592, 126 A. L. R. 258, we said:

" 'Quasi' means 'as if, almost' (Bouvier), and quasi-contracts are not contracts at all. They do not rest upon consent. They are obligations created by legal fiction in order to do justice."

In that case, suit was brought to recover upon the super-added liability of a stockholder of an insolvent bank. The principal question presented therein was whether Rem. Rev. Stat., § 157 [P. C. § 8162], which is the six-year statute, was applicable to such an action. In holding that it was not, this court said:

"We are inclined to the opinion that this statute does not contemplate quasi-contracts or liabilities merely contractual in nature, but liabilities which are either expressly stated in a written agreement or which follow by natural and reasonable implication from the promissory language of the agreement, as distinguished from liabilities created by fictional processes of the law or imported into the agreement from some external source."

Although the language just quoted was used with respect to Rem. Rev. Stat., § 157, relating to contracts in writing, it is just as applicable to Rem. Rev. Stat. (Sup.), § 159 (3), relating to contracts not in writing, for if quasi-contracts or liabilities created by statute do not constitute contracts or contractual obligations they are as far from coming within Rem. Rev. Stat. (Sup.), § 159(3), as they are from coming within Rem. Rev. Stat., § 157.

In *Abram v. San Joaquin Cotton Oil Co.* (D. C. Cal.), 46 F. Supp. 969, the court discussed at length the question here involved and concluded as follows:

" 'The phrase "liability created by statute" means a liability which would not exist but for the statute. . . .' 37 C. J. 783, § 123. 'Where a duty exists only by virtue of a statute, or an obligation to pay is fixed in the act itself, the obligation is one created by statute.' 16 Cal. Jur. 473. It is true many fine distinctions may be drawn in an attempt to determine the variations of a contractual liability where a statute is involved and a purely statutory liability; yet the conclusion that the obligation of the employer to pay time and one-half for overtime is statutory under the Act, is hardly escapable in view of the purpose and provisions of the Act."

In *Lorenzetti v. American Trust Co.* (D. C. Cal.), 45 F. Supp. 128, the court said at page 139:

"While the existence of the employer-employee relationship brought plaintiffs and their employers within the Act, and the rate at which they were paid determined the amount of overtime to which they are entitled, there would be no liability, were it not for the Act. A liability created by statute has been defined as one which would not exist but for the statute. *Fidelity & Deposit Co. of Maryland v. Lindholm,* 9 Cir., 66 F. 2d 56, 58, 89 A. L. R. 279; *Hocking Valley R. Co. v. New York Coal Co.,* 6 Cir., 217 F. 727, 730."

In the case of *Phoenix v. Drinkwater,* 46 Ariz. 470, 52 P. (2d) 1175, an employee of the city brought suit to recover the difference between what he had actually been paid and what he was entitled to receive under the state minimum wage law. The question there involved was whether the case was controlled by the three-year statute of that state covering obligations arising out of contract or by the one-

year statute relating to liabilities created by statute. In holding that the one-year statute applied, the supreme court of Arizona said:

"After a careful consideration of the question from every angle, we are of the opinion that the position of the defendant is the sounder as a matter of reason and common sense. It is true that the *relation* existing between the defendant and plaintiff's assignors was contractual in its nature, being that of employer and employee, but the *liability* upon which plaintiff sues was created solely by the terms of the statute and cannot exist without it, being, therefore, statutory in its nature. The language of subdivision 3, section 2058, applies the one-year period of limitation to a 'liability' and not a relationship. We hold, therefore, that since the particular 'liability' upon which this suit is based was created by statute, the one-year statute of limitations applies thereto."

As stated before, there are some Federal court decisions which hold that claims arising under the fair labor standards act rest upon contract and are therefore governed by statutes comparable to Rem. Rev. Stat., § 157 or § 159 (3). Notable among these decisions is the case of *Cunningham v. Weyerhaeuser Timber Co.* (D. C. Wash.), 52 F. Supp. 654, in which the other cases cited herein as holding to that effect are discussed. The court in the *Cunningham* case proceeded upon the principle that a statute which affects the subject matter of a contract, in contemplation of law, is incorporated into and becomes a part thereof, if the statute is in effect at the time the contract is made. Upon that view the court said:

"Giving application to this rule, we can not find, as contended by the defendant, that the cause of action asserted by the plaintiff rests upon a 'statutory liability' or a 'quasi contract', so as to bring it within the two-year limitation fixed by the laws of Washington, but must find that it is clearly an action for compensation, based upon an oral contract of employment, and governed, therefore by the three-year limitation statute."

With all due respect to the court pronouncing that conclusion, we are unable to agree with that pronouncement in its entirety. We can agree that the action is clearly one for

compensation under all the decisions touching that question, but we cannot agree that it rests fundamentally upon an oral contract of employment, rather than upon a "statutory liability." It may be conceded, also, that the liability is "contractual in nature," in the sense that the law will imply an obligation on the part of the employer to pay to his employee the wages specified in the statute. But this does not mean that it is a liability *arising out of contract*. On the contrary, the obligation of the employer to pay minimum wages is fixed by the statute; the prohibition against excess hours of employment except upon the basis of one and one-half times the regular rate of pay is enjoined by the statute; and the remedy for the breach of either duty is prescribed by the statute. The breach therefore gives rise to "a liability created by statute."

Respondents rely largely upon two cases from this court: *Oregon-Washington R. & N. Co. v. Seattle Grain Co.*, 106 Wash. 1, 178 Pac. 648, 185 Pac. 583, and *Chicago, M. & St. P. R. Co. v. Frye & Co.*, 109 Wash. 68, 186 Pac. 668.

In the first of these cases, a railroad company brought suit to recover from a shipper over its railroad the difference between certain charges made for carrying freight and the sums it was required to charge by its printed and published tariff schedules. This court held that the action was upon a written contract and came within the six-year statute of limitations. We quote from the opinion:

"Since the bill of lading is a contract, it is, of course, a contract in writing, and any action upon the contract, or any action upon a liability, express or implied, arising out of the contract, is within the statute if commenced within six years from the time the cause of action accrued, unless the circumstances that the contract does not specifically name the sum to be charged for the carriage, but provides that the sum to be paid shall be the statutory rate, changes the nature of the liability from one on contract, or one arising out of contract, to a liability created by law. It seems clear to us that it does not have this effect. A liability created by statute is one in which no element of agreement enters. It is an obligation which the law creates in the absence of an agreement. But the present liability is not of this sort. The law but fixes the rate to be charged when a contract of car-

riage is made. *In other words, the law does not create the liability; it but determines the amount of the liability created by the express contract of the parties.* As such, it is not a liability created by statute. It is a liability arising out of the contract which the parties have by their writing expressed." (Italics ours.)

The distinction between that case and the one before us is plain. In that case, the parties entered into a contract of carriage, as evidenced by a bill of lading which both had signed. The bill of lading provided that the shipper should pay the statutory freight rate. In other words, the contract created the liability, while the statute merely fixed the amount of the liability. In the case at bar, the statute not only fixed the *amount* of the liability, but also *created* the liability itself, for, as said before, except for the statute, there would be no obligation on the appellants to pay either overtime compensation or liquidated damages as therein prescribed.

In the other case relied upon by respondents, *Chicago, M. & St. P. R. Co. v. Frye & Co., supra,* the railroad company brought suit to recover money alleged to be due for freight on shipments of hogs and cattle, and for other charges. The pertinent questions there involved related (1) to the legal rate to be charged as freight for shipment of both hogs and cattle, and (2) to the applicability of the statute of limitations and the extent thereof.

Upon the question of the legal freight rates, this court said:

"To determine what was the legal rate to be charged as freight on the shipments of hogs, the tariffs established by the plaintiff and filed with the interstate commerce commission must be considered in the light of the transactions as shown by the evidence."

And,

"Practically the same questions are involved in the matter of freight on cattle, except that there is no tariff provision for concentration at particular points, or at all. . . . In the absence of any tariff provision covering the matter, the plaintiff would be entitled to receive the reasonable value of the service rendered."

On the question of the statute of limitations, the court said:

"There being no written contract covering this local service or the local rate, it would seem to fall under subd. 3, § 159, Rem. Code [Rem. Rev. Stat. (Sup.), § 159(3)], as a contract or liability, express or implied, not in writing.

"While it may be admitted that, under the interstate commerce law as it now stands, the terms of a contract between a shipper and a carrier are largely fixed by law, yet, notwithstanding that fact, a contract is entered into between the parties whenever the one delivers his goods to the other and the latter accepts them for transportation, and the limitation period is to be determined from the fact that the parties reduce their agreement to writing or permit it to rest in parol, and such is the meaning of this court in *Oregon-Washington R. & Nav. Co. v. Seattle Grain Co.,* 106 Wash. 1, 178 Pac. 648, and since the relations between the shipper and the carrier are contractual, the matter of freight rates cannot fall within the two-year limitation.

"From what has been said, it follows that the trial court was right in all except the application of the two-year statute of limitations, and erred only in not applying the three-year statute."

Again, the distinction between that case and the one here is patent. When the shipper delivered its cattle and hogs to the carrier for transportation there arose a contractual and common-law liability to pay for the service, and this liability existed independently of the statute. All that the statute did was to fix the *amount* of the liability under the contract; it did not *create* that liability. In the case at bar, as previously stated, the statute not only fixed the amount of the liability, but also created the liability.

After careful consideration of the cases above cited and the reasoning employed therein, we are of the opinion that respondents' claims are to be classed as liabilities created by statute, for in the absence of the statute there would be no obligation at all upon the appellants to pay overtime compensation, liquidated damages, or attorney's fees as therein prescribed.

Under this view of the case, the three-year statute does not apply, and consequently the two-year statute is applicable.

The cause will be remanded, with direction to the trial court to modify its judgment to the extent of excluding recovery in favor of either respondent for any greater period than two years immediately preceding the filing of the respective complaints.

BEALS, C. J., BLAKE, ROBINSON, SIMPSON, JEFFERS, MALLERY, and GRADY, JJ., concur.

MILLARD, J. (dissenting in part)—I dissent in part. I agree that the two-year statute of limitations applies. I am of the view that all of the work performed by respondents during period for which they allege they are entitled to compensation, was wholly in intrastate commerce. As respondents failed to prove that they were engaged in interstate commerce during the period for which they seek overtime compensation and liquidated damages, the action should be dismissed.