McDUFFIE et al. v. HAYES FREIGHT LINES, Inc.

No. 680–D.

District Court, E. D. Illinois.

May 24, 1947.

Kenneth A. Green, of Mattoon, Ill., and Ben Norwood, of Danville, Ill., for plaintiffs.

David Axelrod and Carl L. Steiner, both of Chicago, Ill., and Thos. G. Stifler, of Danville, Ill., for defendant.

LINDLEY, District Judge.

Plaintiffs are employees of defendant, who is engaged in interstate commerce by truck. Some of them are painters, others, repairmen and still others perform other duties for defendant. They bring their action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b), to recover "unpaid overtime compensation," liquidated damages and reasonable attorneys' fee.

Defendant contends that all plaintiffs are excluded from the provisions of the Fair Labor Standards Act by virtue of Section 13(b) (1), 29 U.S.C.A. § 213(b) (1), which provides that the Act shall not apply to "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service," pursuant to Section 204 of the Motor Carrier Act of 1935, 49 U.S.C.A. § 304(a) (1), (2) and (3), which provides that the Interstate Commerce Commission may, in regulating carriers by motor, establish requirements with respect to various matters, including "qualifications and maximum hours of service of

employees, and safety of operation and equipment." Plaintiffs claim, on the other hand, that their employment, for which they seek recovery, had nothing to do with safety of operation and equipment.

The Supreme Court, in the recent case of Levinson v. Spector Motor Service, 67 S.Ct. 931, 938, held that "the Commission's mere possession of that power, whether exercised or not, necessarily excludes all employees, with respect to whom the power exists, from the benefits of the compulsory overtime provisions" of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., saying that "Congress has prohibited the overlapping of the jurisdiction of the Administrator of the Wage and Hour Division * * * with that of the Interstate Commerce Commission as to maximum hours of service." After referring to the orders of the Interstate Commerce Commission with regard to various specific employees, the court proceeded to define the category of those who are thus removed from the benefits of the Fair Labor Standards Act and placed under the Interstate Commerce Commission as those "a substantial part of whose activities affects the safety of interstate motor carrier operations, although the rest of their activities may not affect the safety of such operations." Said the court, "the fundamental test is simply that the employee's activities affect safety of operation. * * * it is not a question of fundamental concern whether or not it is the larger or the smaller fraction of the employee's time or activities that is devoted to safety work. It is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the Commission's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment." In Pyramid Motor Freight Corporation v. Murray Ispass, 67 S.Ct. 954, 955, the cause was remanded to the District Court with directions to that court "to determine whether or not the activities of each respondent consisted, wholly or in substantial part, of the class of work" affecting the safety of operations of motor vehicles in commerce. Under these decisions there is no longer any doubt as to the extent of the power of the Commission to control the wage and hours of employees of defendant. Nor is there any doubt remaining that, in view of Congress having granted the power to the Commission in this respect, the exemption of such of plaintiffs as are concerned with "safety" from benefits under the Fair Labor Standards Act exists irrespective of whether the Interstate Commerce Commission has attempted to exercise its power.

It may not be amiss to refer to the decisions of certain district courts. Each of them throws some light upon the manner in which they have approached the subject, though the decisions must be read in the light of what the Supreme Court has said. They are helpful only as illustrative of practical application of the rule. In Robbins v. Zabarsky, D.C., 44 F.Supp. 867, the court held that a mechanic repairing and servicing trucks and equipment is subject to regulation by the Commerce Commission and is thereby excluded from the operation of Fair Labor Standards Act. In Tineralla v. Des Moines Transp. Co., Inc., D.C.N.D.Ill., 41 F.Supp. 798, the court held that an employee whose duties are checking, inspecting, servicing, repairing, and generally maintaining trucks engaged in interstate commerce is one whose duties affect safety of operation within the Supreme Court's definition in United States v. American Trucking Associations, Inc., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. In Wolfe v. Union Transfer & Storage Co., D.C., 48 F.Supp. 855, the court held that a mechanic employed by a common carrier of freight by motor vehicle in interstate commerce to repair and maintain the vehicles in proper condition for safe operation is within the jurisdiction of the Commerce Commission and not that of the Administrator of the Fair Labor Standards Act. In McKeown v. Southern California Freight Forwarders, D.C., 49 F.Supp. 543, the court held that the activities of employees consisting chiefly of unloading goods and checking them, did not affect the safety of operations so as to bring them within the jurisdiction of the Commission. In Crean v. M. Moran Transp. Lines, Inc., D.C., 57 F.Supp. 212, the court

held that an employee whose duties include loading and unloading, inspecting physical condition of trailers, labeling shipments, removing leaking packages, is engaged in activities affecting safety of operation. In Walling v. Silver Fleet Motor Express, Inc., D.C., 67 Supp. 846, the court distinguished between the activities of certain employees holding that building bodies or rebuilding badly damaged bodies is construction or manufacture rather than maintenance and repair; that the work of mechanics inspecting and repairing defects is concerned with the safety of operation; that loaders are similarly concerned with such safety but that employees unloading and working in warehouses had no connection with safety of operation. In Anuchick v. Transamerican Freight Lines, Inc., D. C., 46 F.Supp. 861 the court made a similar distinction holding that building bodies amounts to manufacture, not within the jurisdiction of the Commerce Commission and that rebuilding tractors, salvaging whatever is capable of being re-used and installing generators is not work in safety of operation, but that replacing brakes or lights with new ones does involve such safety.

 Many other cases have come before the courts and, of course, each case has been determined in the light of the particular facts involved, but from them, in view of the Supreme Court's announcements, a rather definite conclusion as to the proper standard in testing the employment of any laborer seems obvious. Those employees, a substantial portion of whose time is spent in inspection, repair and maintenance of trailers or tractors, including motors, lights, brakes, or otherwise in creating or maintaining physical conditions essential to the safety of the trailer or tractor on the highway come within the exemption under which jurisdiction has been lodged by Congress in the Interstate Commerce Commission. On the other hand, those employees who are engaged in the manufacture of new trailers or such substantial repair of them as to amount to rebuilding, designing and building trailers, painting, cleaning, removing paint from them and such similar activities are not concerned with safety of operation and are, therefore, within the Fair Labor Standards Act. The real test as to whether exclusion exists lies in the fact as to whether a substantial part of the employee's work is concerned with safety of operation or equipment. Not only was that the conclusion of the Supreme Court affirming the Supreme Court of Illinois, in Levinson v. Spector Motor Service, 389 Ill. 466, 59 N.E.2d 817, but it has been the conclusion also in the trial courts in the cases cited and in various other decisions. In view of the recent decisions of the Supreme Court, there can no longer be any question as to the propriety of this standard. It becomes necessary, therefore, for me to determine whether any of the employees are entitled to recover in whole or in part.

Scott Jones, employed in the mill room, framed material for use in trailers, using planes and saws to shape the pieces of material, did repairing of cabs, platforms, doors and trailer beds and made a few warning red flags. No substantial part of his duties was concerned with safety of operation or equipment. Homer McDuffy cleaned, painted and repainted trailers, tractors and company automobiles. He painted some diagonal lines on the rear of trailers and did some masking of lamps. He removed some tires while he did painting and then replaced them. No substantial part of his labor was concerned with the safety of operation or equipment. No substantial part of Warren Jones' duties was in the slightest degree concerned with safety. He is a janitor and caretaker. The same is true of Hubert Bowen. He stacked lumber, painted trailers, took tires off of rims and remounted them; cleaned, removed paint, repaired doors on trailers and put reflectors on the rears of trailer bodies. Glen Taylor and Joe Gore come in the same category. Their work was that of construction in no wise connected with safety of operation. Neither L. O. Timmons' nor Joe Beals' was concerned with safety of operation. Of the claim of each of the foregoing eight plaintiffs, the court has jurisdiction. Each is entitled to recover for any overtime proved.

Clinton Brady made iron reinforcements for trailers, strips of metal which were applied as bands around trailer bodies, and helped install them, and angle irons, and said if his work was not properly done, reinforcement of the beds might be weakened. He worked upon chains on the fifth wheel, that is, the connection between the trailer and truck, to make them safe, straightened some spring-hangers, mounted some tires and worked upon dolleys, which furnish the support of the trailer when not in use. This latter work is not concerned with safety of operation and equipment; but, on the whole, I am convinced that at least a substantial portion of his work was concerned with safety of operation and equipment. Robert Gibbs, during his first year's work, installed fifth wheels, repaired transmissions, differentials and motors and ground valves. After that he repaired frames, axles and bodies, installed brake linings and safety glass, all employment directly concerned with safety of operation and equipment. Paul McNamer is in the same class. He repaired bodies and springs, put new leaves in springs, straightened trailer frames, riveted spring-hangers to trailer frames and did other similar work, a substantial portion of all of which was connected with safety of operation. William Smith must be classified with the last two mentioned employees. He made repairs to trailers, welded fenders, straightened dolleys and trailer frames, pulled axles, disconnected brakes and reconnected and replaced radios and installed safety glass. A substantial part of his work was connected with safety of operation. Harold Rippy, too, must be included in the same category. He straightened tractor wheels, bolted fifth wheels, mounted gas tanks, ground valves, straightened trailer axles, did miscellaneous repair work on tractors; installed starters and lights, worked on ignition, carburator and cooling system and batteries, relined brakes, repaired wipers and steering apparatus, replaced bushings and did much skilled repair work which is directly concerned with safety of operation. Both James Latta and Lloyd Brigman were engaged in labor, a substantial portion of which was concerned with safety of operation. These seven claimants can not recover. Over their claims I have no jurisdiction.

Kermit Claxton's work must be divided into two periods. During the first, from April, 1939, to October, 1939, his work, I find, was concerned with safety of equipment. This court has no jurisdiction of his claim for that period. During the later period, however, from October, 1939, to October, 1943, he was engaged in removing old paint from trailers, painting trailers, removing grease with a putty knife, painting over scratches and stacking lumber. During this period no substantial part of his work had anything to do with safety of operation, and of his claim covering it, I have jurisdiction. He will recover for any overtime wages proved to be due and unpaid for that period. James Craig's duties, too, must be divided into two periods. From September 6, 1941, to February, 1942, he unloaded and stacked lumber; knocked down tires, worked in the paint shop, sandpapered and cleaned trailers and got them ready for painting. During this period of time no part of his work was concerned with safety of operation or equipment and I have jurisdiction of this portion of his claim. For the period from February, 1942, to October 15, 1943, he straightened bent frames, replaced fifth wheel pins, repaired chassis, all work, a substantial portion of which was connected with the safety of equipment and operation. Of his claim for compensation during that period, I have no jurisdiction. Ralph Roderick from May 1, 1939, for six months, did general repair work directly connected with safety of operation. After that he helped build trailers for six months from September, 1939, to March, 1940, not connected with safety of operations. After the latter date, however, he returned to his repair work, all of which was directly concerned with safety of operation.

■ Defendant claims that before plaintiffs may recover they must show that they are concerned with the transportation of goods produced by defendant. It points to the decision of the Supreme Court of the United States in Western Union v. Lenroot, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414, distinguishing between transportation and manufacture and refers to certain

other authorities expounding such distinction. I agree that transportation and production are entirely different, but I am of the opinion that nothing urged in this connection can deprive plaintiffs of their causes of action. The Act applies to employees "engaged in commerce or in the production of goods for commerce." 29 U.S.C.A. §§ 206 and 207. We are not concerned with any question of production for commerce. The question is whether plaintiffs are engaged in commerce, and about that there can be no dispute, for both plaintiffs and defendant admit that defendant and its employees are engaged in commerce. Plaintiffs have stated good causes of action.

■ Congress has provided no limitation upon actions brought under the Fair Labor Standards Act. It has lodged jurisdiction in both state and federal courts. In such situation, I think the action is one based upon a statute and that, in the absence of limitation by Congress, the appropriate statute of limitations of the state controls. In Abram et al. v. San Joaquin Cotton Oil Co., D.C., 46 F.Supp. 969 and 976, the court discussed at length the question of the character of the action and declared it a liability created by statute and therefore controlled by the state statute of limitations, saying: "The phrase 'liability created by statute' means a liability which would not exist but for the statute. * * *" 37 C.J. 783, Sec. 123. "Where a duty exists only by virtue of a statute, or an obligation to pay is fixed in the act itself, the obligation is one created by statute. * * * the conclusion that the obligation of the employer to pay time and one-half for overtime is statutory under the Act, is hardly escapable in view of the purpose and provisions of the Act." To the same effect are Zack v. National Liberty Ins. Co. of America, D.C., 45 F.Supp. 47; Divine v. Levy, D.C., 45 F.Supp. 49; Duncan v. Montgomery Ward & Co., Inc., D.C., 42 F.Supp. 879; Loggins v. Steel Const. Co., 5 Cir. 129 F.2d 118. See extended annotation 157 A.L.R. 545.

In this connection, plaintiffs urge that the action is based upon its written contract of employment which defendant executed prior to the passage of the Fair Labor Standards Act and subsequently re-executed and which is still in force. But the complaint does not count upon this contract and plaintiffs do not, in essence, seek to recover anything provided in it. Rather, they expressly seek to recover overtime wages, special damages and attorneys' fees which are not payable under the contract but payment of which is provided solely by the Fair Labor Standards Act. As indicated by the authorities above cited, the duty to pay such overtime wages and special damages and attorneys fees arises solely by virtue of the statute. Speaking of other statutes, the Supreme Court, in McClaine v. Rankin, 197 U.S. 154, at page 162, 25 S.Ct. 410, at page 412, 49 L.Ed. 702, 3 Ann.Cas. 500, said: "It is true that in particular cases the liability has been held to be, in its nature, contractual, yet, it is nevertheless conditional, and enforceable only according to the Federal statute, independent of which the cause of action does not exist; so that the remedy at law in effect given by that statute is subject to the limitations imposed by the state statute on such actions."

■ I think there can be no question, therefore, that the appropriate statute of limitations is Illinois Revised Statutes, Chapter 83, Sections 16, 17, which limits actions upon unwritten contracts and "civil actions not otherwise provided for" to five years. See Orminski v. Hyland Elec. Sup. Co., 326 Ill.App. 392, 62 N.E.2d 14; Mueller v. Bittle, 321 Ill.App. 363, 53 N.E.2d 56; Cannon v. Miller, 22 Wash.2d 227, 155 P.2d 500, 157 A.L.R. 541. Compare Cunningham v. Weyerhouser Timber Co., D.C., 52 F.Supp. 654.

Plaintiffs rely upon Republic Pictures. Corporation v. Kappler, 8 Cir., 151 F.2d 543, holding that an action for overtime compensation under the Fair Labor Standards Act is an action upon a contract. Judge Sanborn dissented, saying that the suit was clearly one to enforce a right created by a federal statute which creates no period of limitation and comes, therefore, within the purview of the Iowa statute of limitations, citing Order of Railroad. Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788 and Moore v. Illinois Central R. Co.,

312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. I think his reasoning is to be preferred over that of the majority and expresses the federal rule.

It follows, therefore, that under the Illinois statute of limitations, plaintiffs' causes of action, in so far as they accrued prior to five years before the commencement of the suit herein, are barred by the statute of limitations of the state of Illinois and that plaintiffs can recover only such claims for overtime as the evidence may show are properly compensable accruing within five years prior to the commencement of the action herein.

The foregoing includes all of my findings of fact and conclusions of law. Judgment will enter dismissing the suit as to the plaintiffs whom I have found are within the jurisdiction of the Interstate Commerce Commission. I have made no attempt to fix the amounts due the respective plaintiffs whose claims I have allowed in whole or in part. I have set up the yardstick and, if counsel cannot agree upon the amounts due, I will hear further evidence. Upon determination of the amounts due, judgment will enter as to each of the claimants whom I find entitled to the benefits of the Fair Labor Standards Act in whole or in part, in accord with this memorandum.