## UNITED STATES v. SARKOZY et al.
### No. 5295.

United States District Court
E. D. Michigan, S. D.
Aug. 9, 1951.

738

Edward T. Kane, U. S. Atty., and Nicholas Wagener, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Stanley E. Beattie, Bernard F. Zinn, Detroit, Mich., for defendant.

KOSCINSKI, District Judge.

In this action brought under the Renegotiation Act, 50 U.S.C.A.Appendix, § 1191 et seq., to recover excessive profits for the year ending September 30, 1942, findings of fact and conclusions of law on plaintiff's motion for summary judgment were filed on May 9, 1947, finding that plaintiff is entitled to a judgment against all defendants, and that such obligation is a joint one. Amount of the judgment was to be determined upon submission of proofs to the court concerning total credits to which defendants may be entitled; the question of tax credits was not considered at that time because of pending litigation involving 1942 income taxes of Arthur T. Stone. Such proofs have now been submitted.

Findings of Fact.

1. The contracts subject to renegotiation which resulted in the excessive profits determination in suit were awarded to the S. & F. Tool Company, a copartnership composed of Alex Sarkozy, Sr., Elizabeth Sarkozy, his wife, Arthur T. Stone, and Grace M. Stone, his wife.

2. Renegotiation proceedings between the Under Secretary of War and the above named contractor resulted in a determination on July 31, 1944, that $360,000 of the profits realized by said contractor during its fiscal year ended September 30, 1942, under its contracts and sub-contracts subject to renegotiation, pursuant to the provisions of the Renegotiation Act, are excessive, and that the contractor repay such excessive profits to the Treasurer of the United States, after receiving credit for any amount to which its partners as aforesaid may be entitled under Section 3806 of the Internal Revenue Code, 26 U.S.C.A. § 3806.

3. During the period that such profits were realized by the S. & F. Tool Company, the individual defendants were equal partners of that firm.

4. Each of the individual defendants filed income tax returns for the year 1942, listing as income one-fourth of the profits of the S. & F. Tool Company.

5. On the basis of inclusion of $90,000 of the excessive profits in each of their individual income tax returns for the year 1942, and on the theory that they were obligated to repay only $180,000 of such profits, Alex Sarkozy, Sr. and Elizabeth Sarkozy computed their tax credits to be $74,957.61 for Alex Sarkozy and $75,545.68 for Elizabeth Sarkozy, and forwarded a check for $30,059.17 on November 24, 1944, accompanied by a remittance advice to apply $29,496.71 on principal and $562.46 on interest at 6% from July 31, 1944 to date

of payment, to eliminate said $180,000 of such profits.

6. On April 19, 1945 the Internal Revenue Agent in Charge informed Alex and Elizabeth Sarkozy by letter that their taxes for the taxable year 1942 were decreased by the sum of $78,939.10 for Alex Sarkozy and by $79,043.44 for Elizabeth Sarkozy, by reason of elimination of the excess profits from their 1942 income.

7. Reduction of income of the Stones as shown on their tax returns for 1942 resulted in reduction of income taxes by $51,-524 for Arthur T. Stone and by $50,420.72 for Grace M. Stone.

8. After filing of the 1942 tax returns and on June 26, 1946, the Commissioner of Internal Revenue disallowed the partnership claimed to have existed between Arthur T. Stone and Grace M. Stone and assessed a deficiency in income taxes of Arthur T. Stone for that year. A suit was thereupon filed in the Tax Court, Action No. 12125, in which Arthur T. Stone consented to entry of a judgment for additional taxes to be paid by him for the income reported by his wife but taxed to him as a result of disallowance of the claimed partnership. He acquiesced in entry of the judgment in view of a decision adverse to his position in the case of Commissioner v. Tower, 1946, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, involving similar facts.

9. In addition to the litigation in the Tax Court, there were pending four renegotiation proceedings, other than the one which is the subject of the present suit. in which Arthur T. Stone was involved. Final determination of income tax liability and determination of liability for excessive profits in the four additional renegotiations resulted in a recomputation on January 12, 1951, of tax credits of the Stones to be applied toward elimination of the excessive profits in the instant case. After conferences with representatives of the government and the Stones, allocation of Arthur T. Stone's total tax credits for 1942–43 was made to all five renegotiations for that period, and the sum of $39,600 was applied by plaintiff as a tax credit for Arthur T.

Stone in this case, while no tax credit was given to Grace M. Stone.

10. The partnership claimed to have existed between Alex Sarkozy, Sr., and his wife, Elizabeth, was also challenged by the Commissioner of Internal Revenue; a 90-day letter was issued on October 10, 1947, assessing a deficiency in income taxes, based on disallowance of the partnership and taxation of all income of the Sarkozys from the S. & F. Tool Company to Alex Sarkozy, Sr. Alex Sarkozy, Sr. died on December 21, 1945, and Alex Sarkozy, Jr., administrator de bonis non with will annexed, has now been substituted as party defendant. No changes, other than those herein referred to, were made by the plaintiff in the tax credits of the Sarkozys.

11. The complaint in this cause was filed on October 17, 1945 and alleges that the total tax credit to which defendants are entitled under Section 3806 of the Internal Revenue Code is in the amount of $252,-448.01. The following credits of the individual defendants were added to aggregate this total:

| | |
|---|---|
| Alex Sarkozy | $74,957.61 |
| Elizabeth Sarkozy | 75,545.68 |
| Arthur T. Stone | 51,524.00 |
| Grace M. Stone | 50,420.72 |

The complaint alleges, further, that no part of the balance of excessive profits has been repaid except the sum of $29,496.71.

12. Since determination of Arthur T. Stone's 1942 income tax liability as well as his liability in the four additional renegotiation proceedings, plaintiff filed an amended motion for judgment on the pleadings and for summary judgment requesting entry of judgment in the amount of $140,000, plus interest from May 31, 1950, which sum is based on the recomputed tax credits. Proofs were presented by all parties and arguments made by counsel orally and in briefs. During such hearings it developed that defendants Sarkozy were entitled to additional credits by reason of withholding amounts otherwise due them, as follows:

| | |
|---|---|
| September 28, 1945 | $7,102.00 |
| October 22, 1945 | 830.78 |

These amounts were withheld by plaintiff from the S. & F. Tool Company at the time that the Sarkozys were sole proprietors of the business and after sale of the Stones' interest therein.

13. At the conclusion of arguments, the plaintiff submitted the following summary of total credits due defendants and balance of excessive profits still due:

| | | | |
|---|---|---|---|
| Amount of profits determined to be excessive July 31, 1944 | | | $360,000.00 |
| Less tax credits: Alex Sarkozy | | $78,939.10 | |
| Elizabeth Sarkozy | | 79,043.04 | |
| Arthur T. Stone | | 39,600.00 | |
| Grace M. Stone | | None | 197,582.14 |
| Balance due July 31, 1944 | | | $162,417.86 |

Less other credits of Alex and Elizabeth Sarkozy:

| | | |
|---|---|---|
| (1) November 24, 1944—check of $30,059.17 | | |
| Applied to: Interest for 116 days | $3,097.16 | |
| Principal | | 26,962.11 |
| Balance due on principal | | $135,455.75 |
| | | |
| (2) September 28, 1945—withholding—$7,102.00 | | |
| Applied to: Interest for 308 days | 6,858.14 | |
| Principal | | 243.86 |
| Balance of principal | | $135,211.89 |
| | | |
| (3) October 22, 1945—withholding—$830.78 | | |
| Applied to: Interest for 24 days | 533.44 | |
| Principal | | 297.34 |
| Balance of principal | | $134,914.55 |

Interest also is claimed to be due on said sum to date of payment, the daily interest rate being $22.17773.

## Counterclaim.

14. Defendants Sarkozy filed a counterclaim against the plaintiff to recover amounts paid by them in excess of 50 per cent of the renegotiation award, claiming they are obligated to repay only $180,000 of the excessive profits, less any credits to which they may be entitled.

## Cross-Claim.

15. All four individual defendants entered into a written contract on or about September 1, 1943, and signed supplemental agreements covering purchase by Alex Sarkozy, Sr., and sale by Arthur T. Stone and Grace M. Stone of the Stones' interest in the partnership, which contained the following provision: "The Sellers (Arthur T. Stone and Grace M. Stone) jointly and severally agree to pay fifty per cent of all awards by reason of renegotiation by the United States Government (or) any subdivision thereof, of the contracts of S. & F. Tool Company, to the extent that work has been completed thereon, deliveries made, and invoices rendered up to and including the 31st day of August, 1943."

16. In their answer to the cross-claim defendants Stone admit that they are obligated, under this agreement, to repay $180,000 or 50 per cent of the renegotiation award, less any credits to which they may be entitled.

17. In addition to paying $180,000 or one-half of the excessive profits of the S.

& F. Tool Company for 1942, the Sarkozys' credits were applied toward elimination of the remaining $180,000 of excessive profits as follows:

Adjustments in tax credits:
Alex Sarkozy—Tax credit allowed

|  |  |  |
|---|---|---|
| by Treasury Department | $78,939.10 | |
| Tax credit claimed | 74,957.61 | |
| Overpaid on November 24, 1944 | | $3,981.49 |

Elizabeth Sarkozy—

|  |  |  |
|---|---|---|
| Tax credit allowed by Treasury Department | 79,043.04 | |
| Tax credit claimed | 75,545.68 | |
| Overpaid on Nov. 24, 1944 | | 3,497.36 |

Credits by withholding of sums otherwise due the Sarkozys at the time they were sole proprietors of the S. & F. Tool Company:

|  |  |
|---|---|
| September 28, 1945 | 7,102.00 |
| October 22, 1945 | 830.78 |
| **Total** | **$15,411.63** |

18. Defendants Sarkozy filed a motion for summary judgment against defendants Stone, jointly and severally, for $180,000 and interest, less any tax credits to which the Stones may be entitled.

19. During hearings on this motion the Sarkozys submitted the following itemized statement of interest accrued on the $180,000 and on the amounts advanced by them for the Stones:

| | | |
|---|---|---|
| November 24, 1944 | 2425 days | $2,981.30 |
| September 28, 1945 | 2117 " | 2,471.20 |
| October 22, 1945 | 2093 " | 285.90 |

Total interest to October 22, 1945 $5,738.40
Interest for each additional day
at rate of $33.2848

and claim judgment on their cross-claim against the Stones for the full amount of any judgment that may be entered against them in the principal action, and in addition, for the amounts advanced by them, plus interest.

### Cross-Petition

20. Defendants Stone filed a cross-petition against their codefendants, the Sarkozys, but counsel informed the court that the matters raised in the cross-petition are no longer in issue.

### Discussion

Both the Sarkozys and the Stones contend that the Government has taken inconsistent positions with reference to their income tax liability and their liability for excessive profits; that by disallowing the partnership in the income tax matter, plaintiff is now estopped from asserting the existence of that relationship for purposes of establishing liability in this renegotiation claim; and that no judgment can be entered in this suit against Grace M. Stone or Elizabeth Sarkozy.

The basis of liability in income taxation and in renegotiation is not the same. In renegotiation, excessive profits, as determined by renegotiation, must be recovered from profits and *one who received the profits*. United States v. Star Construction Co., Inc., D.C., 71 F.Supp. 758. An income tax is imposed on the *one who earned the income*.

The profits were received by the S. & F. Tool Company, a copartnership, according to the determination of excessive profits made on July 31, 1944. During the entire period that the profits were inuring to the benefit of the S. & F. Tool Company, it operated as a copartnership consisting of all four individual defendants who shared

in distributions of that profit. No claim was made at any time during the pendency of this suit that Grace M. Stone and Elizabeth Sarkozy were not members of the partnership at that time or that no profits from the partnership were paid to them. Only after disallowance of the partnership in later income tax proceedings did defendants advance the argument that, because of the government's position in the income tax controversy, existence of the partnership should be disregarded for purposes of the present suit.

■ The income from the S. & F. Tool Company, during the period of time pertinent here, was "earned" by Arthur T. Stone and Alex Sarkozy, within the meaning of the Internal Revenue Code, according to the ruling of the Commissioner of Internal Revenue, who held it was their personal effort, and investments traceable to them alone, which produced that income. This ruling in no manner affected "ownership" of the partnership interest or profit. As was stated in the case of Commissioner v. Tower, supra, liability for payment of income taxes under the Federal revenue act is not necessarily dependent on the ownership of the property which produces the income. Although the income from the S. & F. Tool Company was entirely taxable to the husbands, the right of the wives to deal with their partnership interests and profits, at will, continued. In fact, one of them, Grace M. Stone, disposed of her interest by sale before this ruling was made.

Failure to recognize the partnership in these proceedings to recover excessive profits, because of the ruling in the tax controversy that no valid partnership existed for income tax purposes, would defeat plaintiff's efforts to recover a substantial portion of the excessive profits still due. By means of a partnership agreement, excessive profits from government contracts could be diverted to enrich the wife's personal estate which could not thereafter be tapped to recapture the profits because of a subsequent determination that such profits were, in fact, "earned" by the husband alone. Although it was found that no genuine partnership existed within the meaning of the provisions of the Internal Revenue Act, for all other intents and purposes the S. & F. Tool Company was a partnership during the period in which excessive profits were made and distributed to all members of the firm, including Grace M. Stone and Elizabeth Sarkozy.

Defendants Sarkozy also contend that each of the defendants received only $90,000 of the excessive profits and each must respond, therefore, only to the extent that such defendant shared in the profits. They offered in evidence correspondence with agencies of the plaintiff relating to computation and recomputation of tax credits for the individual defendants on the basis of inclusion of only $90,000.00 of the excessive profits in the income of each defendant, and urge that this court should now reconsider its original finding that the obligation to repay the balance of the excessive profits is a joint obligation of all four defendants.

■ The full amount of $360,000 in excessive profits was directed to be repaid by the contractor whose contracts were renegotiated—the S. & F. Tool Company, a copartnership consisting of all four defendants. Since a partnership pays no income taxes as such, but taxes are paid by the individual members of the firm who account for their portion of the firm profits, the allocation of profit to each firm member is necessary only for purposes of computing proper tax credits and has no application in determining the extent of individual liability of the firm members for excessive profits of the partnership. In no sense can such allocation of profit be interpreted as admission by the government that the liability is not a joint one. Partnership obligations of the nature here involved rest on all partners jointly as to the entire amount and are not several as to each individual partner in proportion that the excessive profits received or accrued to each partner in distributions from the partnership bears to the whole of such excessive profits. (See original findings of fact and conclusions of law filed herein.)

Defendants Sarkozy further challenge the right of the plaintiff to apply recomputed tax credits of the Stones toward elimination of the excessive profits. It is their contention that the tax credits of $51,524 for Arthur T. Stone and $50,420.72 for Grace M. Stone, as first computed on the basis of their tax returns and as considered in the aggregate tax credits in the complaint, are properly deductible from the amount of excess profits due; that the original computation is final and binding on plaintiff since under Section 3806 of the Internal Revenue Code no change may now be made in that credit in a suit involving recovery of excessive profits; and that the only remedy of the plaintiff to collect any change in the allowable amount must be to collect the underpayment as a tax under Section 3806(b)(2)(A) of the Code.

■ At the outset, this court questions the right of defendants Sarkozy to challenge the tax credits of their codefendants. Tax credits are construed in the nature of "tax refunds"—Universal Oil Products Co. v. Campbell, 7 Cir., 181 F.2d 451. The Stones, as the taxpayers who can claim the refund, are, theoretically, the parties who would be aggrieved by improper application of their credits. However, the arguments advanced by the Sarkozys, that the original computation is binding and conclusive on plaintiff, has been rejected by the Tax Court in the case of National Builders, Inc., v. C. I. R., 12 T.C. 852, in the following language: "It is not until the tax liability as such has been correctly determined that we have a basis for the computation of the credit under Section 3806, and if a credit has been allowed for renegotiation purposes prior to the final determination of the tax liability as such, then the credit must be regarded as tentative and must necessarily fluctuate up or down, dependent upon what is finally determined to be the petitioner's correct tax liability."

■ Recomputation of the tax credits was made after final determination of tax liability of the Stones for the period during which the profits were reported in their tax returns, and after determination of excessive profits to be repaid by Arthur T. Stone in four additional renegotiation proceedings. The original computation was not, therefore, predicated upon a final determination of tax liability.

■ Also, tax credits would be available to Arthur T. Stone toward elimination of all excessive profits which were included in income reported for the same or related periods, including income from the S. & F. Tool Company. Credits were computed and allocated to all five renegotiations, including the one in suit, and he would be entitled in the present case only to such tax credit as was apportionable to excessive profits sought to be recovered in this case.

Subsection 3806(b)(2)(A) of the Code which defendants Sarkozy invoke in support of their contention that the only remedy of plaintiff under that section to collect the difference between the allowed and allowable credit is by the usual method for recovery of a tax, deals with special rules as to individuals for 1942 and 1943, necessitated by enactment of the Current Tax Payment Act of 1943, 26 U.S.C.A. Int.Rev.Acts, page 385, made retroactive to the effective date of Section 3806 as originally passed. The Current Tax Payment Act of 1943 provides for computation of 1943 income taxes through comparison of income for taxable years 1942 and 1943, with forgiveness of 75% of the lesser of the two. The 1943 income tax liability then becomes the larger of either an individual's tax liability for 1943, as reflected on the 1943 return, or the total of his payments for 1942 and 1943 taxes.

Because of the tax-forgiveness features of the Current Tax Payment Act, Subsection 3806(b)(2)(A) provides that no credit shall be allowed for any amount by which the tax for the taxable year 1942 is decreased by application of the tax-credit provisions of Section 3806 which would otherwise apply. But if a credit for that year is allowed, contrary to this requirement, the individual must repay such credit into the Treasury. If it is not voluntarily repaid, the Commissioner shall collect that

amount under the usual methods employed to collect the tax imposed under the general provisions of the Code.

■ The 1943 tax liability of an individual, however, computed by the method above described, is diminished through elimination of excessive profits in renegotiation. Where, as here, the renegotiation was completed after filing of the 1943 tax return, the credit to be granted by virtue of Section 3806(b) will be an amount equal to the decrease in the tax for the taxable year 1943 resulting from elimination from 1942 income of the excessive profits for 1942.—"A Further Inquiry into Renegotiation," 43 Mich.L.Rev. 1, at pp. 44, 45.

The prohibition in Subsection 3806(b) (2)(A) is against granting of tax credit by reason of reduction of the 1942 tax. The documents offered in evidence would seem to indicate that computation of the tax credit here discussed resulted from decrease of the 1943 and not the 1942 income tax liability.

■ Arthur T. Stone does not question the credit granted him although he concedes the correctness of the amount only if allocation of tax credits to the remaining four renegotiations, not involved here, is conceded by plaintiff to be correct. The exact status of the four other renegotiations is not known to this court. The present suit, however, has been pending since 1945 and entry of final judgment should not be delayed pending determination of final tax credits in the other renegotiations, especially since remedies are available to defendant Arthur T. Stone for recovery of tax credits allowable but not allowed, if it should later develop that he is entitled to greater tax credit in the instant case because of any changes in the other four tax credits for the same period.

Allowance of tax credits to Alex and Elizabeth Sarkozy is not disputed by any of the defendants.

The counterclaims of defendants Sarkozy against plaintiff must be dismissed, with prejudice, in view of these findings as to the nature of the liability.

As to the cross-claim of defendants Sarkozy against defendants Stone, the Stones deny that the Sarkozys are entitled to a judgment on the cross-claim until they have paid the amount which is owed by the Stones under their agreement to assume one-half of the obligation under the renegotiation award.

■ The Sarkozys thus far advanced $15,411.13 on the portion of excessive profits which the Stones agreed to pay under their agreement. The provision in that contract on which the Sarkozys base their cross-claim is an outright agreement to pay one-half of the renegotiation award, not an agreement to indemnify only. In an outright agreement to pay a partnership obligation, a binding promise to pay such debt is broken by failure to pay the debt when it matures; in a contract to indemnify only, the indemnity provided is against loss and not against liability to suit. One assuming the debt is liable if he fails to pay it when it matures, whether or not such debt has been paid. 68 C.J.S., Partnership, §§ 265, 266. Although these sections refer to obligations assumed by a continuing, rather than a retiring partner, no reason can be seen against application of the same rule to a retiring partner.

■ The Sarkozys have paid in full the portion of the renegotiation award which they were obligated to pay under the contract. In addition, they advanced payments for the Stones. They have a right to take such steps as will relieve them of any judgment outstanding against them, based on an obligation which, as between the copartners, is the obligation of the Stones alone.

■ A judgment should be entered on the cross-claim. Since the judgment will rest on the same obligation on which the judgment in the principal case will be based, the judgment on the cross-claim should provide that any amounts recovered by the Sarkozys on their judgment, over and above the amounts actually advanced by them for the Stones, must be applied in reduction of the balance due

both on the judgment in the principal suit and the judgment on the cross-claim.

The cross-petition of the Stones against the Sarkozys should be dismissed.

On the facts found, the court makes the following

### Conclusions of Law

1. Plaintiff is not estopped in this action from claiming the existence of a partnership relationship between Alex Sarkozy, Sr. and Elizabeth Sarkozy, and between Arthur T. Stone and Grace M. Stone, by reason of the ruling of the Commissioner of Internal Revenue that no genuine partnership existed between those parties for income tax purposes.

All four individual defendants were members of the S. & F. Tool Company, a copartnership, at the time that excessive profits were earned by such copartnership and distributed to the four copartners.

3. Tax credits to be applied toward elimination of excessive profits are in the nature of tax refunds and right to question application of such credits is available only to the taxpayer aggrieved.

4. Computations of tax credits are not binding upon the government in a pending renegotiation proceeding until final determination of tax liability which can serve as a basis for a final computation of such credits.

5. Application of tax credits in this case was not made contrary to the provisions of Subsection 3806(b)(2)(A) of the Internal Revenue Code.

6. Defendants are entitled to the following tax credits against amount of excessive profits determined:

| | |
|---|---|
| Alex Sarkozy, Sr. | $78,939.10 |
| Elizabeth Sarkozy | 79,043.04 |
| Arthur T. Stone | 39,600.00 |
| Grace M. Stone | None |

7. Other credits to be applied toward elimination of the excessive profits are:

| | |
|---|---|
| November 24, 1944—cash payment | $30,059.17 |
| September 28, 1945—withholding | 7,102.00 |
| October 22, 1945—withholding | 830.78 |

8. After allocation of these tax and other credits to principal and interest due on the renegotiation award, there remains unpaid on the principal the sum of $134,914.55, with interest at the rate of 6 per cent per annum from October 22, 1945, to date of payment, and plaintiff is entitled to judgment therefor against Alex Sarkozy, Jr., administrator de bonis non with will annexed of the estate of Alex Sarkozy, Sr., deceased, Elizabeth Sarkozy, Arthur T. Stone and Grace M. Stone, a copartnership doing business as S. & F. Tool Company, and Alex Sarkozy, Jr., administrator de bonis non with will annexed of the estate of Alex Sarkozy, Sr., deceased, Elizabeth Sarkozy, Arthur T. Stone, and Grace M. Stone, jointly.

9. In view of the findings of this court as to the nature of the liability of defendants to plaintiff, the counterclaims of Alex Sarkozy and Elizabeth Sarkozy must be dismissed.

10. Defendants Arthur T. Stone and Grace M. Stone are obligated, under their agreement with Alex Sarkozy, Sr. and Elizabeth Sarkozy, to pay one-half of the renegotiation award, less tax credits of $39,600.

11. Defendants Alex Sarkozy, Jr., administrator de bonis non with will annexed of the estate of Alex Sarkozy, Sr., deceased, and Elizabeth, Sarkozy, are entitled to a judgment against Arthur T. Stone and Grace M. Stone, on their cross-claim, for the full amount of the judgment to be entered herein in favor of plaintiff, and for the additional sum of $15,411.63 advanced by the Sarkozys for the Stones, together with interest at 6 per cent per annum. Any amounts recovered on such judgment, over and above the amounts actually advanced and interest thereon, shall be applied by Alex Sarkozy and Elizabeth Sarkozy in reduction of the judgment in favor of the plaintiff in the principal action.

12. The cross-petition of Arthur T. Stone and Grace M. Stone against their codefendants should be dismissed.